[No. A080249. First Dist., Div. Three. Mar. 26, 1999.]

DIANA VUILLEMAINROY et al., Plaintiffs and Appellants, v.
AMERICAN ROCK & ASPHALT, INC., Defendant and Respondent.

COUNSEL

Jacobs Associates, Mark B. Jacobs, Marvin A. Jacobs; and B. E. Bergesen III for Plaintiffs and Appellants.

Law Offices of Nancy P. McCarthy, Nancy P. McCarthy; Law Offices of Elizabeth Williams and Elizabeth Williams for Defendant and Respondent.

OPINION

**CORRIGAN, Acting P. J.**—Here we are called upon to interpret the language of Supreme Court precedent and determine whether the exclusivity of the workers' compensation remedy bars recovery in tort to a family whose decedent was killed as a result of an employer's allegedly criminal negligence. We conclude this suit is barred by the Workers' Compensation Act.

*Background*

Plaintiffs' decedent Ray Vuillemainroy was killed in a workplace accident when the brakes failed on a heavily loaded truck he was driving down a steep haul road. Plaintiffs sued Mr. Vuillemainroy's employer, American Rock & Asphalt, Inc. (American Rock) and a number of third party defendants for wrongful death, alleging each was responsible for the fatal accident. In addition to causes of action for general negligence, product and premises liability, plaintiffs alleged the accident was caused by American Rock's "[c]riminal acts and other conduct outside the employment relationship[,]" including manslaughter. Plaintiffs based the involuntary manslaughter claim on accusations that American Rock's trucks and haul roads were chronically and deliberately left unmaintained and unsafe, demonstrating American Rock's utter disregard for the lives and safety of its employees.

American Rock moved for summary judgment on the ground that the Workers' Compensation Act (the Act) provided plaintiffs' exclusive remedy. Plaintiffs acknowledged the accident had occurred during the performance of decedent's employment responsibilities. They asserted, however, that because American Rock's acts constituted involuntary manslaughter, the exclusivity provision of the Act was inapplicable under the authority of *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701 [30 Cal.Rptr.2d 18, 872 P.2d 559] (*Fermino*).

The trial court granted summary judgment, reasoning: "Risks of harm arising from or connected to the type of work an employee performs for the

employer, even when such risks are exacerbated by the employer's failure to implement safety precautions, comply with safety orders and the like, fall within the scope of the 'compensation bargain' between employer and employee. Accordingly, civil compensation for harm so caused is within the exclusive jurisdiction of the California Workers' Compensation Act. [California Labor Code section 3600 et seq.] and all claims for civil damages asserted against American Rock in this action fail." The court subsequently denied plaintiffs' motion for new trial, brought on the same legal ground, and entered judgment in favor of American Rock. This appeal timely followed.

## Discussion

The question before us is purely legal: whether, under existing precedent, acts of an employer constituting involuntary manslaughter fall outside the exclusive workers' compensation remedy, entitling the injured party to pursue a civil action against the employer. Plaintiffs contend the Supreme Court has carved out a "manslaughter exception" in a line of cases culminating with *Fermino, supra,* 7 Cal.4th 701. The contention is unpersuasive. Fairly read, *Fermino* and its predecessors compel the conclusion that workers' compensation is the sole remedy for the claims at issue here.

Our analysis begins with the rationale underlying the exclusivity rule. "Section 3600 of the Labor Code provides that an employer is liable for injuries to its employees arising out of and in the course of employment, and section 3601 declares that where the conditions of workers' compensation exist, the right to recover such compensation is the exclusive remedy against an employer for injury or death of an employee." (*Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 467-468 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758] (*Johns-Manville*).) The basis for this exclusivity is the " 'presumed "compensation bargain," pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' [Citation.]" (*Fermino, supra,* 7 Cal.4th at p. 708.) The exclusivity rule applies even where the employer's misconduct is serious, willful or intentional; in such cases, Labor Code section 4553 dictates that the employee's recovery is increased by one-half. (See *Johns-Manville, supra,* 27 Cal.3d at pp. 472-473.)

 The exclusivity rule is nonetheless subject to statutory and judicially defined exceptions for certain types of intentional employer misconduct. (*Fermino, supra,* 7 Cal.4th at p. 708; Lab. Code, § 3602, subds. (b), (c).) "The applicable law is set forth in [*Fermino*], where the Supreme Court described a 'tripartite system for classifying injuries arising in the course of employment.' [Citation.] 'First, there are injuries caused by employer negligence or without employer fault that are compensated at the normal rate under the workers' compensation system.' [Citation.] These injuries are subject to workers' compensation exclusivity. 'Second, there are injuries caused by ordinary employer conduct that intentionally, knowingly or recklessly harms an employee, for which the employee may be entitled to extra compensation under [Labor Code] section 4553.' [Citation.] These also are subject to workers' compensation exclusivity, but the employee is entitled to a 50 percent increase in compensation if the injury results from the employer's 'serious and willful misconduct.' (Lab. Code, § 4553.) 'Third, there are certain types of *intentional* employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought.' [Citation.] Intentional conduct is beyond the compensation bargain if it could not be considered a normal risk of employment or is contrary to fundamental public policy. (*Id.* at pp. 714-715.)" (*Arendell* v. *Auto Parts Club, Inc.* (1994) 29 Cal.App.4th 1261, 1264 [35 Cal.Rptr.2d 83], italics in original.)

 Relying primarily on *Fermino*, plaintiffs assert this latter category, intentional misconduct "beyond the compensation bargain," encompasses the criminal negligence alleged here.[1] They read the case too broadly.

In *Fermino*, an employee was confined in a windowless room where store managers and security agents accused her of theft, hurled profanities at her, demanded she confess, threatened to have her arrested, refused her repeated requests to leave the room to call her mother, and told her witnesses were waiting in the next room. The employee was released only after she became hysterical, at which point she was told there were no witnesses and that her interrogators believed she was innocent. She sued her employer for false imprisonment, and the trial court sustained a demurrer brought on the ground of workers' compensation exclusivity. (7 Cal.4th at pp. 706-707.)

The Supreme Court reversed. The question, it explained, was whether false imprisonment falls within the compensation bargain, i.e., whether it is

---

[1]We assume solely for purposes of discussion that American Rock was guilty of manslaughter. It appears that, although the California Occupational Safety and Health Administration referred the case to the district attorney, no criminal charges were ever brought.

"the sort of employer conduct that can ever be viewed as a normal aspect of the employment relationship." (*Fermino, supra,* 7 Cal.4th at p. 718; see also *id.* at pp. 720-721.) In language relied upon by plaintiffs here, it answered in the negative: "When an employer forcibly and criminally deprives an employee of her liberty, even as a means to otherwise legitimate ends, it steps outside its 'proper role,' whether it uses assault and battery to enforce that false imprisonment, or employs some other coercive stratagem. [¶] Unlike the tort of intentional infliction of emotional distress considered in *Cole* [v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743]], the tort of false imprisonment involves *criminal conduct* against the employee's person, not permissible conduct that only becomes intentionally tortious in light of the employer's supposed malicious state of mind. Thus, permitting an employee's civil action for false imprisonment presents none of the dangers recognized in *Cole* and *Johns-Manville* that allowance of such exceptions would undermine the exclusivity provisions of the workers' compensation system. Rather, in order to plead false imprisonment in a civil action, a plaintiff/employee would have to allege rather specific, and fairly uncommon, acts of involuntary and criminal confinement." (*Id.* at pp. 721-723, italics in original, fns. omitted.)

Plaintiffs urge that the above analysis extends equally to any tortious employer act constituting criminal conduct, including manslaughter. They stretch the principle too far. In a footnote to the quoted text, the Supreme Court expressly anticipated and rejected such a broad interpretation of its holding: "In stating that false imprisonment is outside the scope of the compensation bargain because it constitutes a crime against the person of the employee, we do not mean to suggest that regulatory crimes such as violations of health and safety standards or special orders are actions outside the normal course of employment. On the contrary, the Act includes such regulatory crimes within its scope. (See §§ 6423, 4553.1; see also *Johns-Manville, supra,* 27 Cal.3d at pp. 474-475 [workers' compensation the only remedy for injuries resulting from willful failure to comply with government regulations regarding dust levels].) *It is an expected part of the compensation bargain that industrial injury will result from an employer's violation of health and safety, environmental and similar regulations.* What we hold today, rather, is that those classes of intentional employer crimes against the employee's person by means of violence and coercion, such as those crimes numerated in part 1, title 8 of the Penal Code, violate the employee's reasonable expectations and transgress the limits of the compensation bargain." (*Fermino, supra,* 7 Cal.4th at p. 723, fn. 7, italics added.)

*Fermino* thus confirms that the instant case is subject to the exclusivity rule. It expressly states that health and safety violations, such as those

alleged here, are squarely within the boundaries of the Act. Intentional crimes committed by means of violence and coercion were not alleged in this case. In light of its express language, *Fermino* cannot reasonably be read to create an exception to the workers' compensation scheme broad enough to encompass the alleged criminal negligence at issue here.

Nor does *Fermino* depart from a considerable body of precedent holding that injuries caused by unsafe working conditions are compensable solely under workers' compensation, even if the employer recklessly or deliberately failed to correct known safety violations.[2] In *Johns-Manville, supra,* 27 Cal.3d at page 475, the court held that workers' compensation is the sole remedy unless the employer's intentional misconduct goes beyond a failure to assure that the tools used by the employee or the physical environment of the workplace are safe. In *Up-right, Inc.* v. *Van Erickson* (1992) 5 Cal.App.4th 579, 582-584 [7 Cal.Rptr.2d 34], criminal violations of child protection laws resulting in injury were held not to support an exception to the exclusivity rule. *Stalnaker* v. *Boeing Co.* (1986) 186 Cal.App.3d 1291 [231 Cal.Rptr. 323] applied the exclusivity rule to a case in which the employer knowingly sent an employee onto a gunnery range containing hidden live ordnance. Affixing the label of manslaughter to the creation of unsafe working conditions does not avoid the exclusivity bar. "What matters, then, is not the label that might be affixed to the employer conduct, but whether the conduct itself, concretely, is of the kind that is within the compensation bargain." (*Fermino, supra,* 7 Cal.4th at p. 718.) Indeed, to accept plaintiffs' position that a death caused by an employer's criminal negligence is beyond the compensation bargain would invite the wholesale labeling of workplace fatalities as manslaughters to circumvent the workers' compensation system. Even while fashioning limited exceptions to the rule of exclusivity, the Supreme Court has consistently cautioned against opening such a Pandora's box. (*Id.* at p. 715; see also *Johns-Manville, supra,* at pp. 474, 478; *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160-161 [233 Cal.Rptr. 308, 729 P.2d 743].)

We hold the trial court correctly ruled that plaintiffs' civil action was barred.

---

[2]We note that, in addition to increased workers' compensation obligations under Labor Code section 4553, an employer may also be subject to substantial fines and prosecution under either the Labor Code or Penal Code section 192 for willful violations of employee safety standards resulting in the death of an employee. (Lab. Code, § 6425.)

*Disposition*

The judgment is affirmed.

Parrilli, J., and Walker, J., concurred.