[No. B135121. Second Dist., Div. Three. Sept. 28, 2001.]

ROSS C. GUNNELL et al., Plaintiffs and Appellants, v. METROCOLOR LABORATORIES, INC., et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts V(F), V(G), V(H), and V(I) of the Discussion.

**COUNSEL**

Law Offices of Martina A. Silas and Martina A. Silas for Plaintiffs and Appellants Ross C. Gunnell, James L. Walters and Ronald J. Cohen.

Law Offices of Ned Good and Ned Good for Plaintiff and Appellant Ross C. Gunnell.

Horvitz & Levy, Frederic D. Cohen, Andrea M. Gauthier; Stone & Hiles, Russell D. Hiles and David L. Schaffer for Defendants and Respondents.

**OPINION**

**KITCHING, J.—**

## I. INTRODUCTION

Plaintiffs sued their employer for injuries they sustained from exposure to a hazardous chemical substance the employer gave them to clean a film processing lab. The trial court found that the exclusive remedy provision of the Workers' Compensation Act (WCA) barred plaintiffs' independent civil action, and granted judgment notwithstanding the verdict (JNOV). Plaintiffs appeal. We affirm the grant of JNOV.

We conclude that we are bound by *Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758] (hereafter *Johns-Manville*), which holds that an employer's concealment of known unsafe working conditions and violation of environmental safety regulations remain within the compensation bargain underlying the WCA. Therefore the WCA provides the exclusive remedy for injuries caused by this employer conduct. We also conclude that the evidence does not support plaintiffs' claim that a criminal battery occurred, because the employer did not use force or violence in employing plaintiffs to clean the film lab with hazardous chemicals. For the same reason, plaintiffs cannot show the employer injured them by a "willful physical assault." Thus neither battery nor willful physical assault provides an exception to the WCA's exclusive remedy provision. We therefore affirm a judgment in favor of defendants.

We observe that the facts of this case reveal egregious misconduct by the employer, who failed to take steps to assure the safety of workers hired to use a dangerous chemical substance and concealed the danger from those employees. While we do not condone the employer's misconduct, we feel constrained by *Johns-Manville, supra,* 27 Cal.3d 465, whose holding we are required to follow. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

## II. PROCEDURAL HISTORY

Plaintiffs Ross C. Gunnell, James L. Walters, and Ronald J. Cohen sued, among other defendants, Metrocolor Laboratories, Inc. (Metrocolor) and Warner Brothers, Inc. (Time Warner). Their complaint included causes of action for intentional infliction of emotional distress, strict liability ultrahazardous activity, civil conspiracy, battery, and fraud.

The trial court granted various motions for summary judgment, summary adjudication, nonsuit, and directed verdict in favor of Metrocolor and Time Warner. These rulings ended the case as to Walters and Cohen, and left battery as Gunnell's only cause of action to go to the jury. Pursuant to instructions on the employer's alleged willful physical assault (Lab. Code, § 3602, subd. (b)(1)),[1] the court submitted this cause of action to the jury with directions to return a verdict on special issues.

The jury returned the following special verdict:

1. Metrocolor specifically intended to injure Gunnell.

2. Gunnell did not consent to the contact with the harmful chemicals.

3. The contact with the chemicals caused injury to Gunnell.

4. Defendant's willful physical assault caused Gunnell $750,000 in economic damages and $900,000 in noneconomic damages, for total damages of $1,650,000.

5. Defendant was guilty of oppression, malice, and fraud in the conduct upon which the jury based its finding of liability for a willful physical assault.

6. Punitive damages of $5 million should be assessed against Metrocolor.

On Gunnell's motion, the court ruled that Time Warner had successor liability for his judgment against Metrocolor. The trial court ordered judgment for $6,650,000 in favor of Gunnell and against Metrocolor and Time Warner. Metrocolor and Time Warner moved for JNOV, arguing that the WCA provided the exclusive remedy for Gunnell's injuries. Based on *Johns-Manville, supra,* 27 Cal.3d 465, the trial court found that the WCA provided the exclusive remedy for toxic exposure injuries in the workplace, and granted JNOV on the ground that section 3602, subdivision (a) barred Gunnell's battery claim.

Gunnell, Walters, and Cohen filed a timely notice of appeal.

## III. FACTS

Although only Gunnell's case was submitted to the jury, the appeals of Walters and Cohen stem from the facts that underlie Gunnell's appeal.

---

[1]Unless otherwise specified, statutory references in this opinion will be to the Labor Code.

Pursuant to the standard of review of a grant of a JNOV (see pt. V(B) of the Discussion, *post*), the facts are as follows.

Gunnell, Walters, and Cohen were unskilled laborers who belonged to Local 724 of the Studio Utility Employees Union. The union supplied laborers to film studios in the Los Angeles area. Union laborers customarily performed work assisting carpenters as they built sets, dismantling sets after filming was completed, performing maintenance (such as gardening and moving furniture), moving lumber, tools, and construction materials, and cleaning. In 1989, Gunnell, Walters, and Cohen worked for four and one-half months at Metrocolor Laboratories, Inc., which owned a facility to process and develop television and movie film. The laborers' assignment was to clean walls, pipes, and other parts of the interior of the film lab. Gerald House, the safety and engineer project coordinator and program manager of Metrocolor's Hazard Communication Program, generally supervised the cleaning of the Metrocolor film lab, the project on which Gunnell, Walters, and Cohen worked. David Carrasco, Metrocolor's head of labor, directly supervised work done by Gunnell, Walters, Cohen, and other Union Local 724 workers.

Metrocolor directed Gunnell, Walters, and Cohen to clean the interior of the film lab with a blue-green substance they then believed to be cleaning soap. They filled mop buckets and sprayers with the blue-green solution from 55-gallon barrels. Metrocolor provided no hazard training, posted no signs about chemical hazards, and never told the laborers what the 55-gallon barrels contained. None of the barrels of blue-green solution had labels warning of a chemical hazard or identifying the contents of the barrels. During delivery of the 55-gallon barrels of blue-green solution, Gunnell observed his supervisor, Carrasco, removing labels from each barrel before offloading them from a truck for use by Gunnell and his coworkers in cleaning the facility. The barrels provided to the workers had no labels by the time the workers used them. At that time, Gunnell believed the blue-green substance was harmless. Charles Bracey, who supervised Gunnell's work crew, testified that the blue-green substance in the barrels was referred to at Metrocolor as "green or blue strong soap."

Cleaning the interior walls and ceiling of the Metrocolor film lab exposed Gunnell, Walters, and Cohen to the blue-green cleaning substance. Gunnell transferred undiluted blue-green liquid from the barrels to buckets and sprayers. The workers sometimes did not dilute the substance before using it. Gunnell sprayed the ceiling with the blue-green solution, causing dirt to bead. He then used a mop to remove the cleaner and dirt from the ceiling, usually repeating the procedure several times to clean each area. After

cleaning the ceiling, he cleaned the walls, and finally cleaned floors and pipes. As he worked on the ceiling, the blue-green cleaning liquid "rained" down on him, making contact with his skin, running down his back and chest, and getting inside his gloves. Pressing the mop against the ceiling and walls caused liquid to squeeze out of the mop and run down the handle into his sleeves, down his arms, and into his shirt. Gunnell used several gallons of solution every day. After a day's work, the blue-green solution soaked his clothing and feet. He remained wet until he arrived home. He worked in street clothes. Metrocolor provided no protective gear except for rubber gloves, which disintegrated after about a half-hour of use, and a paper suit that did not protect Gunnell from being soaked.

While working at Metrocolor, Gunnell did not recall ever being told what the blue-green cleaning substance was inside the barrels. No one told him about or required him to attend a safety program or a "right to know" program. No one trained him on how to handle chemicals. Gunnell testified that on one occasion when he was working in clothing soaked with the blue-green substance, he saw House, Carrasco, and Fuhrmann (director of facilities at Metrocolor) observe as he cleaned a room. Gunnell asked if the blue-green substance was safe. House responded, "Yes, sir. Yes, it is safe." Walters's foreman told him several times the cleaner was safe.

After finishing his work at Metrocolor, Gunnell learned that the blue-green substance provided for cleaning the film-processing lab was Absorb, an organic solvent/degreaser. Absorb contains sodium hydroxide and 2-butoxyethanol, known as 2BE. Sodium hydroxide and 2BE appear on the OSHA Director's list of hazardous substances. 2BE is one of a class of chemicals known to cause brain and nervous system damage. 2BE absorbs readily through the skin and into the bloodstream. Diluting 2BE causes it to absorb through skin more readily. Once in the bloodstream, 2BE targets the liver, kidneys, respiratory tract, and central nervous system. Its effects on the central nervous system include headaches, nausea, dizziness, confusion, loss of consciousness, and possible death. Breathing vapor, combined with skin exposure, significantly increases exposure. Workers using 2BE should avoid skin contact and wear chemical-resistant gloves and possibly a respirator.

During four and one-half months of using Absorb, Gunnell sustained injuries, which included a slowing of brain function; anxiety and panic attacks; concentration difficulties; loss of cognitive functioning; personality changes; mood and temper problems; respiratory problems; and numbness. Gunnell was classified as disabled from working as a laborer. Plaintiffs' toxicology and neuropsychology experts testified that exposure to 2BE at the Metrocolor film lab, to a reasonable degree of medical probability, caused Gunnell's injuries.

## IV. ISSUES

The published portion of this opinion addresses several issues:

1. Whether section 3602, subdivision (a) provides the exclusive remedy for plaintiffs' injuries and therefore bars this action;

2. Whether the employer committed a criminal battery against plaintiffs; and

3. Whether the employer committed a "willful physical assault" which entitles plaintiffs to claim the exception to the exclusive remedy provision in section 3602, subdivision (b)(1).

The unpublished portion of this opinion addresses other issues.

## V. DISCUSSION

### A. *The Trial Court's Ruling Granting JNOV*

The defendants' motion for JNOV argued that the WCA's exclusive remedy provision in section 3602, subdivision (a) barred Gunnell's civil action for damages. Defendants more specifically contended that even if Metrocolor intentionally exposed Gunnell to a toxic substance and intentionally concealed its toxicity from Gunnell, Metrocolor's conduct did not constitute a "willful physical assault" that would entitle Gunnell to claim the exception to the exclusive remedy provision in section 3602, subdivision (b)(1). We quote relevant parts of section 3602, *post*.

The trial court found that *Johns-Manville* and related cases held that the WCA provided the exclusive remedy for toxic exposure injuries in the workplace, and that Gunnell's battery claim did not come within the exception in section 3602, subdivision (b)(1). Therefore the trial court granted JNOV.

### B. *The Standard of Review of the Grant of a JNOV*

■ On appeal from a judgment for the defendant notwithstanding the verdict, ordinarily an appellate court will use the same standard the trial court uses to rule on the motion. The court will determine whether the record, viewed most favorably to the party securing the verdict, contains any substantial evidence supporting the verdict. Here, however, the issues presented deal solely with the application of a statute to the facts supporting the verdict. Thus the issue before this court is a question of law: whether, under

the facts as determined by the jury's verdict, the exclusive remedy provision of the WCA does or does not bar Gunnell's action. We review this question of law de novo. (See *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 284-285 [73 Cal.Rptr.2d 596].)

*C. Workers' Compensation Provides the Exclusive Remedy for an Employer's Concealment of Known Unsafe Workplace Conditions*

*1. The Exclusive Remedy Provision in Section 3602, Subdivision (a) and the Workers' Compensation Bargain*

In determining whether a WCA exclusivity provision bars a cause of action against an employer, the initial question is whether the alleged injury falls within the scope of the exclusive remedy provision. Section 3602, subdivision (a) sets forth the exclusive remedy provision applicable in this appeal. It states, in relevant part: "(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer[.]"

Thus section 3602 requires the conditions of compensation set forth in section 3600 to concur. Section 3600, subdivision (a) states, in part, that "[l]iability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558, shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . in those cases where the following conditions of compensation concur: [¶] . . . [¶]

"(2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.

"(3) Where the injury is proximately caused by the employment, either with or without negligence."

Thus a precondition for applying section 3602, subdivision (a) is that the employee must sustain the injury "arising out of and in the course of the employment," the injury must proximately cause the injury, and at the time of the injury the employee must be performing service growing out of and incidental to the employment and must be acting within the course of the employment.

■ Section 3602, subdivision (a), reflects a "compensation bargain" that underlies this exclusive remedy provision of the WCA. Pursuant to this compensation bargain, the employer "assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) The employee, without having to prove fault, receives relatively swift and certain benefits to cure or relieve the effects of industrial injury. In exchange, the employee gives up the wider range of civil tort damages potentially available. (*Ibid.*)

Plaintiffs' briefing on appeal at times appears to define "the compensation bargain" with reference to the collective bargaining agreement between the plaintiffs' union and Metrocolor, or with reference to what Gunnell and the other plaintiffs believed their employment with Metrocolor would or would not include. Such a definition mischaracterizes "the compensation bargain." The compensation bargain does not refer to a particular employment or to the parties' subjective expectations about particular employment. The compensation bargain is a "presumed" and "theoretical" bargain that forms the "underlying premise behind this statutorily created system of workers' compensation." (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 811 [102 Cal.Rptr.2d 562, 14 P.3d 234].) The compensation bargain defined in *Shoemaker v. Myers, supra,* 52 Cal.3d at page 16, is the one that has relevance in assessing whether section 3602, subdivision (a) does or does not apply.

■ The question is whether Gunnell's injuries, caused by chemicals Metrocolor supplied for the work he was hired to perform, resulted from employer conduct that remains inside, or falls outside, the compensation bargain.

### 2. Johns-Manville Controls This Appeal

The facts in this appeal closely parallel those in *Johns-Manville, supra,* 27 Cal.3d 465. In *Johns-Manville,* the employer mined, milled, manufactured, and packaged asbestos. Working in a Johns-Manville plant for 29 years continually exposed plaintiff Rudkin to asbestos, which caused him to develop pneumoconiosis, lung cancer, or other asbestos-related illnesses. Since 1924, Johns-Manville had known that long exposure to or ingestion of asbestos was dangerous to health, but the company concealed this knowledge from Rudkin. Johns-Manville advised Rudkin it was safe to work in close proximity to asbestos, failed to provide him with adequate protective devices, and did not operate the plant in accordance with state and federal

regulations governing dust levels. Johns-Manville also retained unqualified doctors to examine Rudkin, did not provide the doctors with adequate information about the risk of asbestos exposure, and did not inform the doctors that exposure to asbestos while he worked at the plant caused Rudkin's pulmonary disease. Finally, Johns-Manville willfully failed to file a first report of occupational injury or illness with the State of California regarding Rudkin's injury as required by law. If Johns-Manville had made this filing and revealed the danger from asbestos, Rudkin would have been protected. Johns-Manville performed these acts and omissions falsely and fraudulently, with intent to induce Rudkin to continue to work in a dangerous environment. Rudkin was ignorant of the risks involved, and would not have continued to work in such an environment if he had known the facts. Rudkin's complaint alleged causes of action for fraud and conspiracy with others to perpetrate these acts. Johns-Manville's answer alleged that the WCA exclusive remedy provision barred the action. (*Johns-Manville, supra,* 27 Cal.3d at pp. 469-470.)

*Johns-Manville* concluded that the WCA, in section 4553,[2] was designed to penalize an employer's intentional misconduct and to compensate injuries resulting from such acts. (*Johns-Manville, supra,* 27 Cal.3d at p. 473.) In this connection, *Johns-Manville* held that workers' compensation provided the exclusive remedy for injuries suffered because the employer made false representations about, or concealed dangers inherent in, a material employees were required to handle. (*Id.* at pp. 473-474.) Workers' compensation also provided the exclusive remedy for injuries caused by an employer's malicious misconduct in allowing an employee to use a machine without proper instruction. (*Ibid.*) Where an employer knows a danger to an employee exists but fails to take corrective action or warn the employee of the risk, "[s]uch conduct may be characterized as intentional or even deceitful. Yet if an action at law were allowed as a remedy, many cases cognizable under workers' compensation would also be prosecuted outside that system. The focus of the inquiry in a case involving work-related injury would often be not whether the injury arose out of and in the course of employment, but the state of knowledge of the employer and the employee regarding the dangerous condition which caused the injury. Such a result would undermine the underlying premise upon which the workers' compensation system is based." (*Id.* at p. 474.)

To permit an action at law for damages for any intentional misconduct by an employer would significantly disturb the compensation bargain upon

---

[2]Section 4553 provides that if an employee is injured by reason of the "serious and willful misconduct" of the employer or the employer's managerial personnel as designated by the statute, the amount of compensation otherwise recoverable shall be increased by one-half.

which the WCA is based. "[S]ection 4553 is the sole remedy for additional compensation against an employer whose employee is injured in the first instance as the result of a deliberate failure to assure that the physical environment of the work place is safe. [¶] Thus, if the complaint alleged only that plaintiff contracted the disease because defendant knew and concealed from him that his health was endangered by asbestos in the work environment, failed to supply adequate protective devices to avoid disease, and violated governmental regulations relating to dust levels at the plant, plaintiff's only remedy would be to prosecute his claim under the workers' compensation law." (*Johns-Manville, supra*, 27 Cal.3d at pp. 474-475.)

This holding governs the case at bench. Gunnell claims Metrocolor deceived and defrauded him by not revealing that Absorb was unsafe to use in the employment, assured Gunnell that Absorb was safe to use, did not provide adequate gloves, clothing, or other protective gear, did not provide training in using and handling of Absorb, removed warning labels from Absorb containers, and violated government safety regulations regarding use of Absorb and warnings to employees about its toxic chemical properties. Under *Johns-Manville*, an injury to an employee caused by an employer's deceit and concealment of hazardous substances used in the employment, failure to train, and failure to assure a safe workplace environment remains within the course of employment. *Johns-Manville* thus confines Gunnell's remedies to those provided by the WCA.

Cases decided since *Johns-Manville* affirm that where the employer's conduct giving rise to the plaintiff's claim arises out of and in the course of the employment, the WCA remains the exclusive remedy, notwithstanding an employer's knowing failure to assure that the workplace is safe (*Vuillemainroy v. American Rock & Asphalt, Inc.* (1999) 70 Cal.App.4th 1280, 1286 [83 Cal.Rptr.2d 269]; *Williams v. International Paper Co.* (1982) 129 Cal.App.3d 810, 819 [181 Cal.Rptr. 342]; *Stalnaker v. Boeing Co.* (1986) 186 Cal.App.3d 1291, 1296, 1300-1301 [231 Cal.Rptr. 323]) or the employer's fraud, deceit, or concealment of a dangerous condition (*United States Borax & Chemical Corp. v. Superior Court* (1985) 167 Cal.App.3d 406, 410-411 [213 Cal.Rptr. 155]; *Spratley v. Winchell Donut House, Inc.* (1987) 188 Cal.App.3d 1408, 1412 [234 Cal.Rptr. 121]).

It is true that *Williams, Stalnaker*, and *Spratley* found that the employer did not specifically intend to injure the plaintiff. (*Williams v. International Paper Co., supra*, 129 Cal.App.3d at p. 819; *Stalnaker v. Boeing Co., supra*, 186 Cal.App.3d at p. 1300; *Spratley v. Winchell Donut House, Inc., supra*, 188 Cal.App.3d at p. 1414.) In this appeal, the jury's special verdict found that Metrocolor specifically intended to injure Gunnell. We conclude, however,

that Metrocolor's intentional misconduct did not go beyond its failure to assure that the substances used by the employee or the physical environment were safe. There is no meaningful factual distinction between this case and the facts of *Johns-Manville*. Therefore the WCA provides Gunnell's remedy, and he cannot maintain a civil action against Metrocolor. (*Johns-Manville, supra*, 27 Cal.3d at pp. 474-475.) We conclude that *Johns-Manville* requires affirmance of the grant of JNOV.

### D. *No Criminal Battery Occurred*

Gunnell claims that Metrocolor committed a criminal battery on the plaintiffs, and therefore argues, pursuant to *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701 [30 Cal.Rptr.2d 18, 872 P.2d 559], that section 3602 does not bar his independent civil suit for damages.

Certain types of "injurious employer misconduct" remain outside the compensation bargain and thus beyond the coverage of the WCA. (*Fermino v. Fedco, Inc., supra*, 7 Cal.4th at p. 708.) In some instances, even though an injury arises in the course of employment, an employer engaging in misconduct steps out of its proper role or engages in conduct of questionable relationship to the employment. (*Ibid.*) *Fermino* addressed the relationship between such intentional employer torts and workers' compensation.

Unlike many other states, in California workers' compensation provides the exclusive remedy for at least some intentional torts committed by an employer. (*Fermino v. Fedco, Inc., supra*, 7 Cal.4th at p. 709.) *Fermino* described a "tripartite system for classifying injuries arising in the course of employment. First, there are injuries caused by employer negligence or without employer fault that are compensated at the normal rate under the workers' compensation system. Second, there are injuries caused by ordinary employer conduct that intentionally, knowingly or recklessly harms an employee, for which the employee may be entitled to extra compensation under section 4553. Third, there are certain types of intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought." (7 Cal.4th at pp. 713-714.)

Gunnell argues that a criminal battery fits within the third *Fermino* category of intentional employer misconduct and because criminal battery therefore falls outside the compensation bargain, section 3602, subdivision (a) does not apply. Thus the question is whether Gunnell's injuries, caused by chemicals Metrocolor supplied for the work he was hired to perform,

resulted from injurious employer misconduct that remains inside, or falls outside, the compensation bargain.

*Fermino* held that the plaintiff stated a cause of action for false imprisonment,[3] and that false imprisonment committed by an employer against an employee was always outside the scope of the compensation bargain. (*Fermino v. Fedco, Inc., supra*, 7 Cal.4th at pp. 723-724.) Because the intentional tort of false imprisonment involves criminal conduct against the employee's person, it is not a normal part of the employment relationship and lies outside the compensation bargain. (*Id.* at pp. 721-722.) *Fermino* qualifies this statement, however, by saying that regulatory crimes, such as violations of health and safety standards or special orders, remain within the normal course of employment and within the WCA. (*Id.* at p. 723, fn. 7, citing *Johns-Manville, supra*, 27 Cal.3d at pp. 474-475.)

In language relied on by Gunnell, this part of the *Fermino* opinion continues: "What we hold today, rather, is that those classes of intentional employer crimes against the employee's person by means of violence and coercion, such as those crimes numerated in part 1, title 8 of the Penal Code, violate the employee's reasonable expectations and transgress the limits of the compensation bargain." (*Fermino v. Fedco, Inc., supra*, 7 Cal.4th at p. 723, fn. 7.)

Gunnell argues that Metrocolor committed a criminal battery in violation of Penal Code section 242, a crime described in part 1, title 8 of the Penal Code. Gunnell cites the jury's findings that Metrocolor specifically intended to injure Gunnell, who did not consent to contact with the harmful chemicals that caused his injuries, and that in committing a battery on Gunnell, Metrocolor acted with oppression, malice, and fraud.

 Penal Code section 242 states: "A battery is any willful and unlawful use of force or violence upon the person of another." A battery cannot be accomplished without a touching of the victim. (*People v. Jackson* (2000) 77 Cal.App.4th 574, 578 [91 Cal.Rptr.2d 805].) The issue in this

---

[3]In *Fermino*, the plaintiff worked as a sales clerk in the jewelry department of defendant's department store. The store's personnel manager summoned the plaintiff to a windowless room and interrogated her concerning her alleged theft of the proceeds of a $4.95 sale to a customer. Two security agents and the store's loss prevention manager joined the personnel manager. The interrogation lasted more than one hour, during which defendants denied the plaintiff's repeated requests to leave the room to call her mother and "physically compelled" plaintiff to remain in the room. (*Fermino v. Fedco, Inc., supra*, 7 Cal.4th at pp. 706-707.) When the plaintiff tried to leave and walked toward the door, a security guard "slid in front of the door, threw up a hand and gestured her to stop." (*Id.* at p. 707.)

appeal, however, is not whether a "touching" occurred. It is whether the touching occurred through Metrocolor's "use of force or violence."

 Although the force used need not be violent or severe and need not cause pain or bodily harm, some force or violence must be used for a battery to occur. (*People v. Rocha* (1971) 3 Cal.3d 893, 899-900, fn. 12 [92 Cal.Rptr. 172, 479 P.2d 372]; Pen. Code, § 242.) Battery requires a "violent injury" or "the least touching," defined as " 'any wrongful act committed *by means of physical force* against the person of another.' " (*People v. Colantuono* (1994) 7 Cal.4th 206, 214 [26 Cal.Rptr.2d 908, 865 P.2d 704], italics added.) Here Metrocolor used no force to cause chemicals to touch Gunnell's body. On plaintiffs' facts, it was Metrocolor's fraud or deceit— calling the Absorb solvent a "green or blue strong soap," failing to identify the chemical hazards in Absorb or to warn workers about those hazards, assuring Gunnell the blue-green cleaning liquid was safe to use, and removing warning labels from containers of the chemical—which led Gunnell to use the harmful chemicals. Even if those chemicals caused a "touching," Metrocolor did not accomplish that touching by using "physical force" against Gunnell. Therefore Metrocolor did not commit a criminal battery.

*Fermino* calls the crimes listed in part 1, title 8 of the Penal Code "intentional employer crimes against the employee's person *by means of violence and coercion*." (*Fermino v. Fedco, Inc., supra*, 7 Cal.4th at p. 723, fn. 7, italics added.) Such crimes violate reasonable employee expectations and transgress the limits of the compensation bargain. (*Ibid.*) Gunnell interprets *Fermino* to mean that an employee may maintain an independent civil suit based on an employer's commission of any crime listed in part 1, title 8 of the Penal Code—including criminal battery, Penal Code section 242, even if the crime did not include force or violence. At least one case shows this is not accurate.

In *Vuillemainroy v. American Rock & Asphalt, Inc., supra*, 70 Cal.App.4th 1280, the plaintiffs made this argument with reference to another crime in part 1, title 8 of the Penal Code, involuntary manslaughter (Pen. Code, § 192, subd. (b)). (70 Cal.App.4th at p. 1285.) In *Vuillemainroy*, plaintiffs were the family of an employee killed in a workplace accident when the brakes failed on a heavily loaded truck he drove down a steep haul road. Plaintiffs sued the employer, alleging it was guilty of involuntary manslaughter by deliberately and chronically leaving its trucks and haul roads in a state that was not well maintained and was not safe. (*Id.* at p. 1282.)

*Vuillemainroy* rejected the argument that *Fermino* would permit an independent civil action for any tortious employer act constituting criminal

conduct. (*Vuillemainroy v. American Rock & Asphalt, Inc., supra,* 70 Cal.App.4th at pp. 1285-1286.) *Vuillemainroy* stated that *Fermino* expressly places "health and safety violations, such as those alleged here, . . . squarely within the boundaries of the [Workers' Compensation] Act. Intentional crimes committed *by means of violence and coercion* were not alleged in this case. . . . *Fermino* cannot reasonably be read to create an exception to the workers' compensation scheme broad enough to encompass the alleged criminal negligence at issue here." (*Id.* at pp. 1285-1286, italics added.)

As the italicized wording indicates, *Fermino* placed crimes involving violence and coercion outside the boundaries of the WCA. The failure to maintain safe vehicles and roads did not constitute criminal conduct involving violence and coercion. Instead such employer misconduct constituted regulatory crimes, i.e., the " 'employer's violation of health and safety, environmental and similar regulations' " which *Fermino* and *Johns-Manville* identified as within the WCA's exclusive remedy provisions. *Fermino* distinguished that type of intentional employer misconduct from the " 'intentional employer crimes against the employee's person by means of violence and coercion' " which remained outside the exclusive remedy provision and gave rise to an independent civil action. (*Vuillemainroy v. American Rock & Asphalt, Inc., supra,* 70 Cal.App.4th at pp. 1285-1286, quoting *Fermino v. Fedco, Inc., supra,* 7 Cal.4th at p. 723, fn. 7, italics omitted.)

As we have concluded, Metrocolor did not commit a battery against Gunnell. Metrocolor did not use force or violence against Gunnell and the other plaintiffs in order to bring them into contact with harmful chemicals. Therefore the intentional employer misconduct committed by Metrocolor was not an intentional employer crime against the employee's person by means of violence and coercion which *Fermino* places outside the scope of section 3602, subdivision (a). Instead Metrocolor committed regulatory crime, violated health and safety standards, and maintained an unsafe workplace. Workers' compensation provides the exclusive remedy for Metrocolor's misconduct pursuant to *Fermino, Johns-Manville,* and *Vuillemainroy.* Therefore section 3602, subdivision (a) bars Gunnell's action.

E. *Section 3602, Subdivision (b)(1) Provides No Exception Under the Facts of This Appeal*

Gunnell argues that the battery was a willful physical assault, which places this case within section 3602, subdivision (b)(1), the statutory exception to the exclusive remedy provision of subdivision (a).

Section 3602, subdivision (b)(1) states: "An employee . . . may bring an action at law for damages against the employer, as if this division did not apply, . . . [¶] . . . [w]here the employee's injury or death is proximately caused by a willful physical assault by the employer."

The statute requires a "willful *physical* assault by the employer." Thus it requires the same element necessary for a criminal battery: the use of force or violence. Having discussed this element in relation to criminal battery, we need not reiterate the point other than to say that Metrocolor did not use physical force or violence against Gunnell. Neither of the two cases on which Gunnell relies dissuades us from concluding that section 3602, subdivision (b)(1) does not apply.

First, *Magliulo v. Superior Court* (1975) 47 Cal.App.3d 760 [121 Cal.Rptr. 621] concluded that an employee injured by her employer's intentional physical assault could bring action at law against the employer. (*Id.* at p. 779.) In *Magliulo*, plaintiff worked as a waitress in a restaurant co-owned by the defendant, whom she accused of assaulting and battering by violently striking and pushing her back and other parts of her body. Thus she specifically alleged the employer's use of force or violence, an element that is absent in Gunnell's appeal.

Second, in *Herrick v. Quality Hotels, Inns & Resorts, Inc.* (1993) 19 Cal.App.4th 1608 [24 Cal.Rptr.2d 203], plaintiff Herrick worked as a hotel security guard. He knew that Wilson, his supervisor, carried a gun in violation of hotel policy prohibiting weapons. Wilson also lived in and had guns in the hotel. Wilson had written up Herrick for performance problems during Herrick's employment. On a day when Herrick arrived late for work due to car problems, he encountered Wilson in the hotel garage. Wilson told Herrick he needed to sign a piece of paper. Seeing the paper was a termination notice, Herrick refused to sign and said he wanted to speak to Anani, the hotel's general manager. Wilson drew his gun, said he was going to blow Herrick's head off, and told him to get off the property. Herrick thought he was going to die. He was able to leave, however, and reported the incident to Anani, who said Wilson was a good security director, that he did not believe Wilson had pulled a gun on Herrick, and that no action would be taken against Wilson. (*Id.* at pp. 1612-1614.)

The jury found that within the scope of his employment, plaintiff's supervisor threatened him with a pistol with specific intent to cause injury to Herrick. (*Herrick v. Quality Hotels, Inns & Resorts, Inc., supra,* 19 Cal.App.4th at p. 1615.) *Herrick,* decided under section 3602, subdivision

(b)(1), held that Wilson's threat to Herrick with a pistol "was a *physical* assault within the meaning of . . . section 3602, subdivision(b)(1)." (*Herrick*, at p. 1617, italics added.) *Herrick* explained that bodily contact was not necessary for a "physical assault," but that physical assault occurred when someone engaged in physical conduct which a reasonable person would perceive to be a real, present and apparent threat of bodily harm. (*Ibid.*)

*Magliulo* and *Herrick* reflect an employer's use or threat of physical force or violence, as do other cases that allow an employee plaintiff to pursue an independent civil action. (*Meyer v. Graphic Arts International Union* (1979) 88 Cal.App.3d 176, 177-179 [151 Cal.Rptr. 597] [employer attacked, beat, struck, assaulted, forcibly kissed and embraced plaintiff employee on one occasion, raped her on a second occasion, attacked her on a third occasion]; *Conway v. Globin* (1951) 105 Cal.App.2d 495, 496-498 [233 P.2d 612][4] [without provocation, employer attacked plaintiff, tearing his clothes and striking him in the face and body, breaking two of his teeth].) Metrocolor did not use or threaten to use physical force on Gunnell and the other plaintiffs. We have rejected Gunnell's argument that deceit constitutes, or substitutes for, the use of physical force. Thus Gunnell does not satisfy the requirements to bring this case within section 3602, subdivision (b)(1).

F.-I.*

· · · · · · · · · · · · · · · · · · · · · · · · · ·

## VI. CONCLUSION

We conclude that this case, under the governing precedent in *Johns-Manville*, remains within Labor Code section 3602, subdivision (a) of the WCA Metrocolor's concealment of known unsafe working conditions and violation of environmental safety regulations do not take the case outside that exclusive remedy provision. Moreover, the facts do not show that Metrocolor committed a criminal battery against the plaintiffs or that plaintiffs can claim the "willful physical assault" exception to the exclusive remedy provision in section 3602, subdivision (b)(1). Therefore the WCA limits the remedies available to the plaintiffs, who cannot bring an independent civil suit against the employer. We therefore affirm a judgment in favor of defendants.

---

[4]*Magliulo, Meyer*, and *Conway* were decided before enactment of section 3602, subdivision (b)(1). As the California Supreme Court has concluded, however, that statute ratified the holdings of *Magliulo* and *Conway*. (*Fermino v. Fedco, Inc., supra*, 7 Cal.4th at p. 712, fn. 3.)
*See footnote, *ante*, page 710.

## VII. Disposition

The judgment is affirmed. Gunnell's motion for sanctions on appeal is denied. Costs on appeal are awarded to defendants Metrocolor Laboratories, Inc., and Time Warner Entertainment Company.

Croskey, Acting P. J., and Aldrich, J., concurred.

Appellants' petition for a review by the Supreme Court was denied December 19, 2001.