Filed 4/7/15  Primo Hospitality Group v. The Americana at Brand CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PRIMO HOSPITALITY GROUP, INC. et al.,<br><br>　　　　Plaintiffs, Respondents and Cross-Defendants,<br><br>　　　　v.<br><br>THE AMERICANA AT BRAND, LLC et al.,<br><br>　　　　Defendants, Appellants and Cross-Complainants. | B247394<br><br>(Los Angeles County<br>Super. Ct. No. BC432109) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven Kleifield, Judge.  Affirmed.

Gordon & Rees, LLP, Don Willenburg for Defendant and Appellant The Americana At Brand, LLC.

Quinn Emanuel Urquhart & Sullivan, LLP, John S. Gordon for Defendant and Appellant Caruso Management Co., Ltd.

Richard L. Weiner and Douglas Adam Linde, for Plaintiffs, Cross-Defendants and Respondents.

Appellants The Americana at Brand, LLC (Americana) and Caruso Management Co., Ltd. (Caruso Management) seek reversal of the award of $1.4 million to Primo Hospitality Group (Primo) after a jury found that appellants had committed negligence, trespass and nuisance based on water intrusion into the restaurant which Primo had built out and was operating at appellants' mall in Glendale. Finding that appellants invited what they contend to be an error in a particular instruction, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Primo built out a space for a new restaurant, Caffe Primo, at an "upscale" mall in Glendale. Primo had leased the space from appellant, Americana in 2007. The mall was managed by defendant Caruso Management. The total cost to build out the leased space (the "build-out cost") was $1.4 million, including, *inter alia,* furniture, flooring, an odor dispersal system, and HVAC. Approximately one year after opening the restaurant, in May or June 2009, Primo first noticed damage to the restaurant's floors caused by water intrusion, a problem which Primo attributed to frequent pressure washing of the mall common area adjacent to the front of its restaurant by the agent of the defendant management company. The source of the water intrusion was confirmed by expert inspection and testing. The problem became so severe that a large part of the restaurant was unusable and the entire premises required installation of a new floor. Americana exercised its right under the lease to put in a temporary replacement floor after Primo declined to do so; Primo had a permanent replacement floor installed later, in May 2010, after its claim to its insurance company was resolved. The problem recurred in July and August 2010, again severely disrupting operation of the restaurant. In November 2010, Primo closed the restaurant and abandoned the property. Primo filed suit on multiple legal theories, including negligence, trespass, and nuisance. Americana and other defendants filed a cross-complaint for unpaid rent under the lease and breach of the guarantee on the lease.

2

The matter was tried to a jury on September 18, 2012, returning special verdicts in which it determined that Americana and Caruso Management were liable to Primo for negligence, trespass and nuisance in the total amount of $1.4 million, allocating the damages as follows: $840,000 against Americana and $560,000 against Caruso Management; finding no other defendants liable on these claims and finding no liability on the other causes of action alleged. The jury also found Primo liable on the cross-complaint.[1] This timely appeal followed.

CONTENTIONS

Americana and Caruso Management do not contest the jury's determinations that they are liable for negligence, trespass and nuisance. Rather, they contend that (1) the lease between the parties barred the award of any amount to Primo because "its build-out costs [] effectively constitute compensation for 'injury to Tenant's business . . .' which appellants contend is barred pursuant to section 18.11 of the lease; and (2) the damages awarded are not properly awarded on any of the negligence theories upon which the jury found appellants liable. As a corollary to the second prong of their argument, appellants additionally assert that the trial court's instruction that the jury "must" award out-of-pocket costs if it found the appellants to be liable was also error. Primo argues that appellants waived the right to assert these contentions by their conduct in the trial court. We agree with Primo's waiver argument for the reasons discussed below, and affirm the judgment for Primo.[2]

_____

[1]     The jury awarded $1,275,000 on the cross-complaint against Primo for unpaid past and future rent. Primo filed a notice of appeal from this award, but later dismissed that cross-appeal. We resolve the issue of an award of costs on appeal with respect to that matter at the end of this opinion.

[2]     Primo also contends that we should dismiss the appeal because appellants failed to address the proper standard of review in their opening brief on an issue "not raised at trial," citing *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021 (*James B.*). We reject this contention for two reasons: First, the issue of the proper measure of damages was the subject of discussion among all counsel and the trial court on at least two occasions prior to trial and *James B., supra,* does not set a bright line rule; rather that

3

DISCUSSION

Americana and Caruso Management seek to focus our attention on the proper construction of paragraph 18.11 of the lease signed by Americana and Primo in 2007 and on the discussions which occurred at the several hearings on Primo's Motion in Limine No. 1 in July and August 2012 in advance of the trial. Their argument on appeal is that (1) the trial court improperly ruled that Primo could recover the money it spent on the build out of the restaurant space and in the first year of operation; and (2) the instruction on tort damages which the trial court read to the jury presented this "flawed" theory of damages. For reasons now discussed, we find persuasive Primo's argument that appellants waived these contentions by not objecting at the proper time to the giving of the instruction on tort damages which appellants had prepared and proffered following the final jury instruction conference.

*Additional facts*

There are two sets of trial court proceedings relevant to the parties' contentions: the hearings on the motions in limine and the jury instruction conference. Appellants argue that they made a timely objection to the tort theory of recover contained in the allegedly errant instruction during the hearings on Primo's motion in limine no. 1 and that the revised version of CACI No. 3900 which appellants proffered on the day after the

---

court stated: "In [the] future, counsel's failure to acknowledge the proper standard of review *might*, in and of itself, be considered a concession of lack of merit." (*Ibid.* [italics added]; see also *Sonic Mfg. Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.) Second, as appellants point out in their reply, it is clear that the de novo standard of review applies to interpretation of contract provisions (see, *Wolf v. Walt Disney Pictures and Television* (2008) 162 Cal.App.4th 1107, 1134-1135) and to determination of the proper measure of damages for the torts which the jury found to have been committed (see *Gunnell v. Metrocolor Laboratories, Inc.* (2001) 92 Cal.App.4th 710, 718-719) as well as to review to determine whether a trial court's instructions were proper. (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82.)

4

jury instruction conference was prepared only to accommodate a prior ruling by the trial court as "a defensive measure."

1.  Hearings on the motions in limine

The trial court conducted three sessions of hearings on motions in limine. The bulk of the hearings focused on Primo's motion in limine no. 1, which formally sought to exclude from the jury's consideration specified paragraphs of the parties' lease, including its paragraph 18.11, a portion of which Primo contended was unenforceable under Civil Code section 1668. The final sentence of this paragraph contained language addressing the damages that might be sought under that contract.

No written ruling on this motion is contained in the record and the reporter's transcript can be understood in conflicting ways. While at one part of the dialogue on the motion in limine, trial counsel for appellants takes the position that allowing evidence of the $1.4 million in "build-out" costs is itself improper under the lease, later, the same counsel accepts that the $1.4 million figure represents Primo's build-out costs and may be presented to the jury ("anything having to do with the physical aspect of the business certainly is recoverable, but argues that no evidence "other than the $1.4 million build-out costs plus all of the lost profits" should be allowed. More importantly, the trial court states on at least two occasions that it is not making any final ruling on what evidence is admissible. On the final day of hearings on the motions in limine and in concluding discussions on Primo's motion in limine no. 1, the trial court states: "And so I am not going to bar that evidence, but I will leave it to defendants to pose limiting instructions to the court." At best the record is ambiguous on whether appellants' counsel made an objection to introduction of the evidence which it now does challenge.

There is no indication in the record that the appellants' counsel actually maintained a position contrary to the instruction it later offered; nor in the cited portions of the record on the hearing on the motions in limine do we find that the trial court ordered that a different instruction than that submitted jointly by the parties on May 30, 2012, be prepared. The only reference which the trial court makes to instructions in the

5

record cited by appellants is the suggestion to appellants' counsel that a limiting instruction might be in order.

2.  The jury instruction conference

The parties filed their "Joint CACI Jury Instructions" on May 30, 2012 (the May version). By statute these instructions are required to set out "all proposed instructions to the jury covering the law as disclosed by the pleadings." (Code Civ. Proc., § 607a.)[3] Among those instructions was the parties' then-agreed upon version of CACI No. 3900 which addressed how the jury was to determine the amount of damages it may award if it were to find any defendant liable under one or more of Primo's three tort theories (negligence, trespass or nuisance). This May version of the joint instructions read: "If you decide that Primo . . . has proved its claim(s) against Defendants, you also must decide how much money will reasonably compensate Primo . . . for the harm. This compensation is called 'damages.' [¶] The amount of damages must include an award for the out of pocket losses that were caused by Defendants' wrongful conduct, even if the particular harm could not have been anticipated. [¶] Primo . . . does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages. [¶] *The following are the specific items of damages claimed by Primo []: out of pocket expenses, lost profits, other past economic loss, future economic loss including lost profits and other economic loss*." (Italics added.) This version of CACI No. 3900 was agreed to by appellants well after Primo had filed its motion in limine no. 1, and after appellants filed their opposition to that motion, both in April 2012.

The trial court conducted a jury instruction conference on the evening of September 12, 2012. The next day appellants submitted a few revised jury instructions,

---

[3]     The same statute provides for submission of modified or additional instructions "before commencement of the [closing] argument" of "additional proposed instructions . . . upon questions of law developed by the evidenced and not disclosed by the pleadings." (*Ibid*.)

including a revised version of CACI No. 3900 that differed from that submitted with the Joint Jury Instructions on May 30, 2012. It was this version of this instruction which the trial court read to the jury when it instructed the jury. Appellants had modified the final paragraph of the instruction originally agreed upon by the parties to read as follows: "*Primo . . . claims damages for out of pocket expense incurred in building out its leased space in order to operate its restaurant and also in a ramp-up investment [sic] during the first twelve months of its operations which it alleged were necessary to build up the restaurant's sales in order to become a viable long-term business.*" (Italics added.) Appellants had deleted from the instruction all references to lost profits and economic losses, whether past or future, and inserted instead the elements of building out the leased space and the first twelve months of "ramp-up" expenses. There is no record of appellants having submitted any limiting instruction as the trial court had indicated they might at the final hearing on motion in limine no. 1 in August.

As trial was conducted in the Los Angeles Superior Court, its Rule No. 3.172 regarding jury instruction conferences applied. That rule requires that "[t]he trial judge [] hold a conference outside the presence of the jury before final argument and after submission . . . of all proposed jury instructions. . . ." At that conference the trial judge resolves, inter alia, which instructions are to be given and "[w]hether there is any other modification to which the parties will stipulate. . . . [¶] The unreported conference will generally result in clarification of the matters, and creation of three categories of instructions, verdicts or findings that will be withdrawn, given without objection, or given as modified by stipulation. Thereafter the conference may be reported and the trial judge may confirm for the record the matters agreed upon. The trial judge may also specify those instructions, verdicts, and findings forms [*sic*] the court proposes to give, refuse or modify. *The court will hear any objections to the foregoing and rule thereon.*" (Italics added.) The reporter's transcript contains no indication that appellants' trial counsel made any statement noting appellants' objections to the final version of CACI No. 3900 which they had prepared. Nor is there any minute order in this record indicating that any objections were made.

7

The record of proceedings concerning the jury instruction conference are sparse. The first reference to that conference is recorded on the day after it has taken place. On September 13, 2012, prior to the resumption of trial testimony, and out of the presence of the jury, counsel for appellants states: "Your honor, we have not got an opportunity to argue the nonsuit. I said I wanted to argue as to a couple of things. So we went ahead and did jury instructions under the assumption that if we lose the nonsuit, those instructions will be given. [¶] Obviously, your honor understood that *the fact I was agreeing to instructions last night* doesn't preclude us from arguing the nonsuit that I said I was going to argue." (Italics added.) A few moments later, the trial judge states, "As I recall, well, we had, I think, a very productive session last night on the jury instructions." Shortly after this, counsel for Primo asks the trial court to consider giving an additional instruction, on comparative fault as it relates to intentional torts. (The parties and the trial judge also discussed other issues.) On the next day and prior to closing arguments there are additional discussions regarding specific jury instructions, including an apparently new special instruction that Primo would like to have given, a missing instruction, and an instruction on constructive eviction. There is no record on the occasion of any of these discussions of various jury instructions of appellants' counsel making a record that it objected to the version CACI No. 3900 which it filed the morning after the jury instruction conference.

3. Analysis

Code of Civil Procedure section 647 requires, to preserve an objection to a proposed jury instruction, that a party must, "at the time when the . . . decision . . . is made, or within a reasonable time thereafter, make[] known his position thereon, by objection or otherwise. . . ." Consistent with this statute, Los Angeles Superior Court Rule No. 3.172 obligates trial counsel to place on the record after the jury instruction conference any objections it may have to any ruling of the trial court on jury instruction matters.

8

Appellants rely on the "objection" they claim they made at the August hearings on Primo's motion in limine no. 1. Assuming arguendo that the position appellants took then constituted an objection (which is ambiguous at best), it was ineffective because it was made at the wrong time. A motion in limine is nonstatutory, and addresses evidence issues and not jury instructions. The purpose of a motion in limine is to obtain a ruling prior to trial that particular evidence should not be heard by the jury. (See, e.g., *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 669 et seq.) That is entirely different from the procedure for offering, or objecting to, a jury instruction. Just as efforts to use motions in limine for purposes other than to resolve evidentiary issues have not been allowed (e.g. rejecting use of the motion in limine procedure as a 'disguised summary judgment motion' which is proscribed by Los Angeles Superior Court Rules 3.57(b) and (c)), they are not to be sanctioned when other procedures are clearly set out in statute and court rules for making a challenge to a jury instruction that counsel contends is improper.

The record establishes that appellants did not present an objection to any instruction at an appropriate point in the proceedings. Appellants' silence at the appropriate time to make known its objection to the version of CACI No. 3900 it submitted after the jury instruction conference "speaks volumes." (Cf. *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1000 [a party which requests or acquiesces in a jury instruction is estopped from asserting it as error on appeal].) Even assuming that what trial counsel said in the mid-summer, pretrial proceedings was an objection, it occurred out of context, at an argument on motion in limine. A hearing on such motions is not a hearing on jury instruction issues. In this case, when jury instruction issues were the subject of discussion, rather than put an objection on the record to the final version of CACI No. 3900, trial counsel for appellants stated his assent to the outcome of the prior

9

evening's jury instruction conference. Even when there was additional discussion in later proceedings and closer to the time the jury was to be instructed concerning new instructions not discussed the previous evening which Primo's counsel wanted to be considered, counsel for appellants did not seek to make a record of any objection to the final version of CACI No. 3900.

While the general rule is that a party need not "except" to "giving an instruction [or] refusing to give an instruction" (Code Civ. Proc., § 647), it may not complain on appeal of trial court error which is induced by that party's own conduct. (See *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212; *McCarty v. State of California Dept. of Transp.* (2008) 164 Cal.App.4th 955, 984.) Appellants have not met their burden on appeal to establish that the error which they now claim was not invited. (*Phillips v. Noble* (1958) 50 Cal.2d 163, 169.) Nor could they as the record in this case does not support appellants' claim that they acquiesced in a judicial determination. (See, e.g., *Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at p. 212.) Instead, the record clearly establishes that appellants proposed the revised version of the instruction they now contend was erroneous and did so without being asked to do so by the trial court. Thus, they have failed to establish their contention that they offered the final version of CACI No. 3900 merely to accommodate a prior ruling by the trial court. The facts require the conclusion that appellants induced the "error" which they assert by their own conduct. (*Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 567.) Their contention therefore lacks merit.

4. *Other contentions*

Resolution of the appeal in this matter makes unnecessary addressing appellants' other contention.

10

DISPOSITION

The judgment is affirmed. Primo shall recover its costs on the appeal by Americana and Caruso Management. Americana shall recover its costs on the cross-appeal which Primo filed and then dismissed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



GOODMAN, J.[*]

We concur:


TURNER, P.J.


KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.