[Civ. No. 18876. First Dist., Div. One. Feb. 9, 1960.]

ROBERT W. GREENBLATT, Appellant, v. THOMAS W. MARTIN, as Director of Alcoholic Beverage Control, Respondent.

Walter H. Duane for Appellant.

Stanley Mosk, Attorney General, and Charles A. Barrett, Deputy Attorney General, for Respondent.

TOBRINER, J.—May the Department of Alcoholic Beverage Control revoke a license because a bar girl solicits a "drink" for herself which costs the patron from one to two dollars and turns out to be orange juice? Does the evidence sustain the charges that the bar girl solicited this drink under a commission, percentage, salary or other profit-sharing plan, scheme or conspiracy? Because we have concluded that the Legislature aimed not to protect the quality of the drink which the bar girl imbibed but rather the customer from persuaded potation of any drink, we have concluded that the department properly revoked the license. We find, too, that ample evidence shows the bar girl to have solicited the drink as part of her employment.

The testimony of the three agents who visited appellant's bar on November 7 and November 10 respectively affords parallel accounts of the methods pursued.

When Department Agent Jenner entered the premises, Laura Overlin, known as Strawberry Lane, a dancer or "stripper" employed there, approached him and asked, "Would you buy me a drink?" Jenner consented and Strawberry exclaimed, "My God, I finally found a sucker." The bartender, who was standing close by, poured an orange colored drink, saying, "Yes, you finally did." When he named the

price at two dollars Jenner exclaimed, in "a little above normal tone," "Two dollars!" The bartender said, "Yes, it's a double."

After Strawberry consumed the concoction, she turned to Jenner, placed her hand on the upper part of his leg, pursed her lips as though she wanted to kiss, moved her face next to his, and then straighening up asked, "Would you buy me another drink?" In response to this request, and others, Jenner bought Strawberry three more drinks, each, like the first, an orange color, each costing two dollars, each containing a straw and toothpick which Strawberry took out before the bartender removed the glass. After the fourth drink, Jenner identified himself as an agent of the Department of Alcoholic Beverage Control. Jenner then questioned the bartender who explained that the drinks were mere orange juice. Then appellant came forward to find out what the "trouble" was; Jenner thereupon told him that Strawberry had solicited drinks; appellant subsequently stated that he did not allow alcohol to be served to his girls; they only drank orange juice.

At approximately 1:30 a. m. on the morning of November 10, Ralph Lampe, another agent of the Department, shortly preceded by Agent Hauptman, entered the bar. Lampe ordered a drink; Strawberry asked him if he would "like some company"; in response to his "Sure" she solicited a drink. Lampe acceded; the bartender, without any specific requests as to the type of drink, again poured out the orange colored drinks, placing a straw and toothpick in each. Observed by Agent Hauptman, seated a couple of stools away, Strawberry palmed the toothpick. For each of these drinks Lampe paid one dollar, and, when he stopped buying, Strawberry left him for Hauptman.

Strawberry then applied the same routine to Hauptman: "Would you like some company?"; "Do you mind if I have a drink?"; and, as before, Strawberry received her orange colored concoction. And Hauptman's purchase contained the customary straws and toothpick, Strawberry again palming the toothpicks, and Hauptman paying one dollar for each drink.

Charged with the violation of section 24200.5, subdivision (b), of the Business and Professions Code, appellant, in his defense before the hearing officer, introduced testimony that Strawberry was paid a fixed salary of one hundred dollars per week and that, although she was permitted to mingle with patrons and accept drinks from them, she had been instructed not to solicit. The bartender had been directed not to serve

any alcoholic beverages; the drinks were no more than crushed ice and orange juice. While the bartender and Strawberry both testified that the drinks contained no toothpicks, appellant, when asked if he attempted "to keep track of the number of drinks that are purchased for a girl," answered, "No, just roughly. . . . [T]o see that they have friends. . . ." When questioned whether it was "good business" that the girls "have friends," he answered, "That's correct. Same as any other business."

The department revoked appellant's license for utilizing this type of operation. Appellant sought a writ of mandate from the superior court but was unsuccessful. He comes here presenting a two-pronged contention that the department lacked jurisdiction of the case because Strawberry drank orange juice rather than an alcoholic beverage, and that the evidence did not sustain the charge that Strawberry solicited the patrons to buy drinks under any commission, percentage, salary or other profit-sharing plan, scheme, or conspiracy. We consider each point separately.

Appellant's argument that section 22 of article XX of the Constitution does not give the Alcoholic Beverage Control Board "authority to regulate the sale or possession of non-alcoholic drinks" and consequently the board "acted in excess of its jurisdiction" here fails in the light of the legislative purpose and the force of enacted provisions.

Business and Professions Code, section 24200.5, subdivision (b), quite clearly endows the board with jurisdiction to regulate the conduct of licensees in premises at which alcoholic beverages are sold; the section in effect forbids the employment or permission to any person "to solicit or encourage others, directly or indirectly, to buy them drinks in the licensed premises under any commission, percentage, salary, or any other profit-sharing plan, scheme, or conspiracy." The Legislature thus forbade the licensee from employing persons for the purpose of solicitation of patrons to purchase drinks for such employees. In so doing, the Legislature did not restrict such prohibited conduct to the solicitation of customers to buy alcoholic drinks for such employees.

The evil at which the Legislature aimed was not the harm bar girls might suffer from imbibing hard liquor or even drinking soft liquids instead of anticipated stronger substances but rather the danger to the public that bars might be converted into places for solicitation of customers to purchase drinks for others. The Legislature did not want bars to become

sources for the artificial stimulation of purchase of "drinks" by patrons through the inducement of the bar's employees. It struck down the technique. The specific object of solicitation, whether the persuasive purchase of hard or soft drinks, is immaterial in view of this prohibition. The Legislature's concern with the solicitation, as such, becomes even more manifest in its omission of the requirement that the beverages so purchased be "alcoholic"; it used the word "drinks" only because it sought the prevention of the use of the bar as a place of induced libation.

The legislative purpose and enactment certainly does not fall because it made no nice distinction between the consumption of nonalcoholic and alcoholic beverages upon the part of the solicitor. The Legislature could well recognize that the practice of solicitation usually involved alcoholic drinks and therefore did not shade the prohibition down from alcoholic to nonalcoholic; it embraced all drinks within the prohibition in order to prevent the obnoxious solicitation.

Indeed the very facts of this case demonstrate the attendant evils of solicitation: the deceptive payment of one dollar to two dollars per drink for orange juice; the feminine favors that were bestowed as part of the inducement; the sale of many drinks in quick succession. These are the characteristics of the bar girl pattern. Here is a system which converts the proper use of the bar as a place of sociable and relaxed drinking into a purposeful and commercial exploitation of the customer. The Legislature provided that the customer should be free of engineered enticement.

We conclude that section 24200.5, subdivision (b), of the Business and Professions Code prohibits this operation; indeed the words of Justice Peters in *Cooper* v. *State Board of Equalization* (1955), 137 Cal.App.2d 672, 680 [290 P.2d 914], apply to it: "The Legislature has seen fit to prohibit the soliciting or begging of drinks, or the hiring or permitting of persons in the bar to do so. The Legislature did so because it felt that such acts were morally reprehensible. This was within the legislative orbit. It is not a judicial question at all, but one of legislative policy."

In determining whether the evidence sustains the charges that the bar girl solicited the drink "under any commission, percentage, salary, or any other profit-sharing plan, scheme, or conspiracy," we evaluate such evidence in the light of the rule that the department's "decisions on factual matters must be affirmed if there is substantial evidence to support them." (*Brice* v. *Department of Alcoholic Beverage*

*Control* (1957), 153 Cal.App.2d 315, 320 [314 P.2d 807].)
 And "[i]n determining whether or not there is substantial evidence in support of the . . . [Board of Equalization's] decision, conflicts in the evidence must be resolved in favor of that decision and all legitimate and reasonable inferences must be indulged in its support." (*Marcucci* v. *Board of Equalization* (1956), 138 Cal.App.2d 605, 608 [292 P.2d 264].)

[█ Our task then requires our determination, first, whether the evidence supports a finding that appellant had established a system of solicitation for payment to the girls per drink and, second, whether, in the absence of such a system, payment of salaries to the girls plus permission to solicit drinks from customers violates the section.

As to the first, the evidence amply sustains the fact that a system of solicitation existed at appellant's bar. The combination of circumstances of Strawberry's removing the toothpicks, her satisfaction in finding a "sucker," the exorbitant price of the orange juice and the use of feminine cajolery, lead to but one conclusion.

While the "toothpick evidence" here may not be as persuasive as the tabulation of the girls' drinks in *Cornell* v. *Reilly* (1954), 127 Cal.App.2d 178 [273 P.2d 572] (bartender made notation on pad located beside cash register whenever one of the B-girls successfully solicited a drink) or the use of the restirring rods in *Cooper* v. *State Board of Equalization, supra* (1955), 137 Cal.App.2d 672 (non-reusable stirring rods placed in each B-girl's drink whether it was straight whiskey, mixed drink or wine; stirring rods collected by the girls; agent saw a girl "cash in" her rods), still the evidence supports a finding that the girls' payments were linked to the solicited drinks on some systematic basis.

 Finally, and as a second basis to support the decision of the department, we note appellant's own expression that he kept track roughly of the solicited drinks for the purpose of seeing that the girls had "friends." Despite the testimony that the girls were instructed not to solicit, appellant's own testimony shows he made use of their attraction for business purposes. Admittedly appellant paid them a salary. When a licensee pays a salary to a female employee, permits her to solicit drinks for herself from patrons, as appellant did here, appellant has committed the described offense. The statute does not require anything more than the payment of salary, that the licensee employ a person "to so-

licit . . . others . . . to buy them drinks . . . under any . . . salary. . . .'' Even in the absence of a system of solicitation, the department's ruling stands.

We conclude that the Legislature has protected the customer's right to access to his drink without exposure to entrapment by females who urge the purchase of orange juice at exorbitant prices, and without subjection to a systematized commercial exploitation of the unwary.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 5, 1960. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.