[Civ. No. 21075.   First Dist., Div. Three.   Jan. 31, 1964.]

MALCOLM E. HARRIS, as Director of the Department of Alcoholic Beverage Control, Plaintiff and Respondent, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD et al., Defendants and Appellants.

Charles P. Just, Lally, Martin & Luce, Lally & Martin and Thomas W. Martin for Defendants and Appellants.

Stanley Mosk, Attorney General, and L. Stephen Porter, Deputy Attorney General, for Plaintiff and Respondent.

DRAPER, P. J.—Although this dispute concerns regulation of the drinking habits of striptease entertainers, the record is by no means bare. Filed here are 363 pages of transcript, many exhibits, and 200 pages of briefs.

Respondent director filed an accusation against each of two bars owned by appellant licensee. One charged three violations of department rule 143 (Cal. Admin. Code, tit. 4, art. 22, § 143), and eight violations of the Alcoholic Beverage Control Act (Bus. & Prof. Code, § 24200.5, subd. (b)). The other charged one violation of the regulation, and six of the code section. The regulation prohibits a licensee's permitting consumption by a female employee, on the premises, of any alcoholic beverage purchased there. The statute directs license revocation if the licensee "has employed or permitted any persons to solicit or encourage others, directly or indirectly to buy them drinks in the licensed premises under any commission, percentage, salary, or other profit-sharing plan, scheme, or conspiracy." ▮ After hearing, the department found against the licensee on all counts of both accusations. It ordered suspension of the license for five days on each violation of the regulation and 60 days on each violation of the statute, the suspensions to run concurrently. Upon expiration of the 60-day period, each license was to be revoked but revocation was stayed permanently on specified terms.

The licensee appealed to the Alcoholic Beverage Control Appeals Board, but conceded the charged violations of the regulation. The board reversed the department's order as to all charged violations of the statute in each bar. The department brought this mandamus proceeding. After hearing on alternative writ, the trial court issued peremptory writ directing vacation of the board's order and affirmance of that of the department. Both board and licensee appeal.

The two bars operate identically. During the evening hours, there is continuous entertainment, principally "exotic" or "striptease" dancing. Four complete shows are presented each night. Each consists of six 12-minute acts. Thus each female entertainer is on stage for 12 minutes and off for an hour. During these off-stage periods, it is the practice for them "to mingle with customers at the bar and accept drinks from them." The owner expects "the girls to be friendly and sociable." He approves of their joining customers

for drinks because "it helps stimulate business." But in a third bar owned by the same licensee, the acts are "of higher caliber," and it is "operated on a different level." The girls "very seldom drink with the customers at all; they don't come on the floor."

Emphasizing the implication that the female entertainers were expected or directed to procure purchase of drinks is the testimony as to use of colored plastic picks in the drinks served. The board agents who investigated these bars testified that such a pick was placed in each of the nonalcoholic drinks (orange mist, club soda or water) served to female entertainers, although these drinks contained no fruit, whereas no pick was placed in any drink served to a customer even when his drink contained a cherry or an olive. There is also testimony that the entertainers for whom drinks were purchased retained these picks. One placed each pick inside the cellophane wrapper of her cigarette package, one in her purse, another in a pocket, and some held them in one hand. The licensee denied that this was a method of keeping track of the number of drinks purchased by customers for the entertainers, and several of the ladies testified that they were collectors, accumulating and keeping at their residences substantial numbers of these articles. The trier of the fact, of course, was not required to conclude that these assertions were true or that they dispelled the inference of an accounting for drinks procured from customers by the female entertainers.

The licensee testified that he instructed each entertainer that she could join a patron for a drink only if the customer invited her to join him. He did not mention any such limitation upon drinks after the first. There is evidence on several counts that the entertainer was invited for the first drink and then requested the customer to purchase refills, or herself ordered the refills from the bartender, orally or by tapping her glass on the bar. We are unable to distinguish between solicitation of the first purchase and a subsequent one, particularly since the price was the same for all. No discount for quantity was allowed the customers, even the two who paid for 19 drinks for a hostess, a cocktail waitress and a cigarette girl in 80 minutes.

The evil the statute is designed to meet is the use of the bar for "a purposeful and commercial exploitation of the customer" (*Greenblatt* v. *Martin*, 177 Cal.App.2d 738, 742 [2 Cal.Rptr. 508]). It is immaterial that the drink purchased

for the employee is nonalcoholic, particularly when the price charged is exorbitant for such drinks (*id.*). Here, the price for all drinks was $1.00 at the bar and $1.25 in a booth. Although this charge was posted on a sign in the bar, the fact remains that such prices for nonalcoholic drinks are high and the rewards of solicitation or encouragement to purchase are thus greater. ▆ Here the female employees who solicited or encouraged the purchase of drinks for themselves did not operate on commission, but were paid salaries. This, however, does not take the case out of the statute. A licensee who pays a salary to a female employee whom he permits to solicit purchase of drinks for herself has committed the offense described in the section (*id.*, p. 743). Moreoever, the statutory prohibition is not limited to solicitation of purchase of drinks for the employees, but extends to direct or indirect encouragement thereof (*Karides* v. *Department of Alcoholic Bev. Control,* 164 Cal.App.2d 549, 552 [331 P.2d 145]).

▆ Under these rules, we have no doubt of the validity of the department's decision in the several instances of initial solicitation of the first drink, or of direct ordering by the employee of the second or subsequent drinks. The retention of the picks, explained only as a collection hobby, warrants the inference drawn by the trier of fact of an accounting system designed to show whether the several female employees justified their salaries by producing bar business. As to Counts V and VI against one bar, and Count V against the other, the investigating agents did not directly observe retention of picks by the female employees. In each case, however, there is testimony that a pick was in each drink served the employee, and was missing when the glass was returned to the bar. In light of the evidence of the uniform retaining of picks in the remaining 11 counts, the inference of retention by the employee is justified. That inference was drawn by the department.

Both the appeals board and the department assert an expertise, which we disclaim for ourselves, in "B-girl operations" and in the "on the floor" activities of the ecdysiasts. It is apparent, however, that the evidence justifies the department's conclusion that there was at least indirect solicitation or encouragement by salaried employees of the purchase of drinks to be consumed by them. The somewhat assertive availability of the ladies for such purchase and consumption clearly is designed to encourage the sale of nonalcoholic beverages at prices appropriate for hard liquor. Fairly appraised, the licensee's testimony admits as much.

It is not the provision of entertainment in the bars and an increase in sales incident thereto which brings this licensee within the statutory proscription (see *Cooper* v. *State Board of Equalization*, 137 Cal.App.2d 672, 680 [290 P.2d 914]). Rather, the stationing at the bar of off-duty entertainers, their rather anxious readiness for consumption of drinks purchased by customers, their direct ordering (whether of the first or the nineteenth drink) for the customer's account, and the apparent system of keeping track of drinks purchased for employee consumption, combine to constitute the offense here.

We are unimpressed with the argument that "entrapment" by the investigating agent is a defense to one count. We need not determine whether this defense is available in this disciplinary proceeding. The evidence does not disclose that the agent solicited solicitation, or that the trapping employee was herself trapped. Moreover, the issue was not determined by the appeals board, against whose decision this proceeding and the writ run.

Appellant assigns error in the hearing officer's sustaining of objection to questions asked of a state narcotics agent called by the licensee. Whether these bars constituted a police problem was not the issue. Licensee's reputation with law enforcement agencies was of doubtful relevancy. In any event, both issues had been fully covered, favorably to licensee, by other law enforcement officers more directly concerned with the problem than the narcotics bureau.

The department ordered that revocation of the licenses "be stayed permanently" if within 40 days after the order the licensee consents to endorsement upon the licenses of conditions in effect prohibiting acceptance of any drink, alcoholic or not, by any female employee from a customer. Appellants argued that this provision was included as an attempt to prevent appeal. The only fair construction is that the period for the licensee to consent commences to run upon final affirmance of the department order, i.e., upon the going down of the remittitur. This is conceded by respondent. In light of this concession, appellants at oral argument withdrew their attack upon the form of the order.

The purported appeal from the peremptory writ is dismissed. The judgment is affirmed.

Salsman, J., and Devine, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied March 25, 1964.