Filed 9/17/20  Contreras Curiel Corp. v. Superior Court CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| CONTRERAS CURIEL CORP., | D077407 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. 37-2018-00026249-CU-PO-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent. | |
| G.S., a Minor, etc., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Katherine A. Bacal, Judge. Petition granted.

Grimm, Vranjes & Greer, Greg Stephan and Stephen P. Conching, for Petitioner.

No appearance for Respondent.

Aguirre & Severson, Michael J. Aguirre, Maria C. Severson, and Elijah T. Gaglio for Real Party in Interest.

Petitioner Contreras Curiel Corporation owns and operates a restaurant, Karina's Mexican Seafood. The restaurant employed Raeanne Angelina Cruz as a server. After working an evening shift, Cruz was fatally injured in a single-car rollover accident.

Tragically, Cruz left behind a young son, G.S. By and through his guardian ad litem, G.S. filed this lawsuit against Contreras Curiel for wrongful death. He alleged Cruz became grossly intoxicated during her shift at the restaurant, based on its practice of allowing and encouraging servers to drink alcohol with restaurant customers. G.S. further alleged that Cruz's intoxication caused her fatal car accident.

Contreras Curiel moved for summary judgment on the grounds that G.S.'s claims were barred by workers' compensation exclusivity (Lab. Code, §§ 3600, 3602) and the statutory immunity for providers of alcoholic beverages (Bus. & Prof. Code, § 25602). The trial court denied the motion.

Contreras Curiel petitions this court for a writ of mandate directing the trial court to vacate its order denying the motion and enter an order granting it. It relies on the same grounds as in the trial court.

We conclude the trial court erred by determining that G.S.'s claims were not subject to workers' compensation exclusivity. Workers' compensation exclusivity is founded on "a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 (*Shoemaker*).)

2

Exclusivity will not apply where an employer engages in conduct that is outside its proper role as an employer or that has a questionable relationship to the worker's employment. (*Shoemaker, supra,* 52 Cal.3d at p. 16.) Such conduct includes certain intentional torts and criminal acts, as well as causes of action whose motive element violates a fundamental public policy of this state. (*Charles J. Vacanti, M.D., Inc. v. State Compensation Insurance Fund* (2001) 24 Cal.4th 800, 822-823 (*Vacanti*).) The undisputed facts here show that the restaurant's conduct does not fall within these exceptions to workers' compensation exclusivity. The evidence, viewed in the light most favorable to G.S., shows that Contreras Curiel allowed and encouraged its servers to consume alcohol with customers during their shifts. While this conduct may have been reckless and appears to violate state alcoholic beverage regulations, it is akin to other conduct that creates or exacerbates workplace hazards. It is not the type of intentional tort or criminal act that removes an employer's conduct from the scope of workers' compensation exclusivity. Nor do G.S.'s claims incorporate a motive element that violates a fundamental public policy of this state, such as racial or gender discrimination.

We are sympathetic to G.S., who has lost his mother. But, based on established law governing the scope of workers' compensation exclusivity, we conclude the trial court erred by denying summary judgment.

Because Contreras Curiel is entitled to summary judgment based on workers' compensation exclusivity, we grant the petition. In light of this conclusion, we need not consider whether the statutory immunity for providers of alcoholic beverages would compel the same result.

FACTUAL AND PROCEDURAL BACKGROUND

Consistent with our standard of review of orders granting summary judgment, we recite the historical facts in the light most favorable to G.S. as

3

the nonmoving party.  (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*); *Light v. Dept. of Parks & Recreation* (2017) 14 Cal.App.5th 75, 81.)

As noted, Cruz was employed as a server at Karina's Mexican Seafood, a restaurant owned and operated by Contreras Curiel.  At the time of her death, Cruz was 22 years old.  G.S. is her son.

The restaurant serves alcohol, including beer and liquor, to its customers.  Customers can also buy alcohol for restaurant employees.  According to restaurant policy, employees are required to consume any alcoholic beverages after their shift is completed.  Under the policy, if a customer would like to purchase an alcoholic beverage for an employee, and the employee would like to accept it, the employee must obtain a manager's approval.  If the manager approves, the beverage is added to the customer's bill but flagged as a "no make" item.  The employee can request that it be made after her shift is over.

The restaurant's policy on employee alcohol consumption was routinely violated.  Servers took shots of liquor during their shifts, sometimes in the presence of managers.  One bartender testified at deposition that she saw servers taking shots "[p]robably every day."  She said that "[e]veryone would get drunk" during their shifts.  Customers bought her drinks "all the time."  Managers drank with customers as well, including one instance where a manager took shots with a customer and two employees.  They finished a bottle of alcohol.

Servers would sometimes get in trouble for drinking, but "it would just depend [on] if the manager was in a good or bad mood."  All of the managers allowed drinking, to a greater or lesser extent.  Their priority was ensuring

4

that each drink was paid for. The restaurant makes its highest profits on alcohol sales.

On September 14, 2017, the restaurant held a thirty-sixth anniversary party. It advertised a special deal on "Coronitas," i.e., small bottles of beer, for 36 cents each. They were sold in buckets of ten. Cruz began her shift at 6:00 p.m. The restaurant was very crowded and "everyone was drinking."

Cruz clocked out at approximately 1:20 a.m. Twenty minutes later, she left the restaurant with a coworker. They were going to drive to Cruz's house in their separate vehicles. The coworker saw Cruz get into her vehicle; she did not seem intoxicated.

Several minutes later, while driving on a highway, Cruz's vehicle was involved in a single-car rollover accident. Cruz was thrown from the vehicle and died at the scene.

G.S., by and through his guardian ad litem, filed this lawsuit against Contreras Curiel. In his operative complaint, G.S. alleged that restaurant managers permitted, encouraged, and "seemingly required" servers to drink alcohol during their shifts. He alleged that Cruz was encouraged to drink during her shift "to the point of gross intoxication" and her intoxication caused her fatal car accident. He alleged causes of action for wrongful death based on negligence and negligence per se.

Contreras Curiel moved for summary judgment. It contended that G.S.'s claims were compensable under the workers' compensation system, which was his exclusive remedy. Alternatively, it contended that G.S.'s claims were barred by the statutory immunity for providers of alcoholic beverages. It relied on, among other things, declarations from its restaurant managers denying that Cruz was told she was expected or required to drink alcohol with customers. Two managers, who were working on the night of

5

Cruz's death, stated in their declarations that they did not see Cruz drinking any alcohol that night and did not see any indication she was intoxicated.

In opposition, G.S. argued that his claims were not subject to workers' compensation exclusivity because the restaurant's conduct departed significantly from the role of a proper employer and violated fundamental public policies. G.S. also argued that the statutory immunity for alcohol providers did not apply in the context of an employer-employee relationship. He relied substantially on the evidence summarized above.[1]

The trial court denied the summary judgment motion. As to workers' compensation exclusivity, the court referenced an earlier order overruling Contreras Curiel's demurrer on similar grounds. Based on evidence that the restaurant "encouraged its servers to drink alcohol with their customers," the court found that the restaurant's conduct was potentially outside the proper role of an employer and violated a fundamental public policy of this state. As to statutory immunity, the court found a triable issue of fact whether Contreras Curiel had a "special relationship" with Cruz that could supersede the immunity.

---

[1] The trial court sustained Contreras Curiel's objections to other evidence offered by G.S., including a toxicology report and testimony regarding Cruz's possible alcohol use on the night of her death. G.S. does not challenge these evidentiary rulings. We therefore need not decide whether the trial court's rulings were correct, and we will not consider any evidence to which objections were sustained. (See *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41.) To the extent G.S. relies on such excluded evidence in his briefing, we will disregard it. We likewise disregard any factual assertions unaccompanied by any citation to evidence and any assertions that rely on citations to nonexistent evidence. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *Lee v. Rich* (2016) 6 Cal.App.5th 270, 273; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1011.)

Contreras Curiel challenged the trial court's order by petition for writ of mandate in this court.  (Code Civ. Proc., § 437c, subd. (m)(1).)  It contended that workers' compensation exclusivity applied to G.S.'s claims and there is no "special relationship" exception to the statutory immunity for alcohol providers.  We issued an order to show cause and stayed the litigation in the trial court.  These proceedings followed.

DISCUSSION

I

*Summary Judgment Standards*

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law.  [Citation.]  The burden of persuasion remains with the party moving for summary judgment.  [Citation.]  When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003 (*Kahn*).)

If the defendant "carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  "The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth

7

the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).)

"We review the record and the determination of the trial court de novo." (*Kahn, supra*, 31 Cal.4th at p. 1003.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler*, *supra*, 25 Cal.4th at p. 768.) This standard is not materially affected by the procedural posture of this original proceeding. (*Prudential Insurance Co. of America, Inc. v. Superior Court* (2002) 98 Cal.App.4th 585, 594-595.)

## II

### *Workers' Compensation Exclusivity*

"Labor Code section 3600, subdivision (a), provides that, subject to certain particular exceptions and conditions, workers' compensation liability, 'in lieu of any other liability whatsoever' will exist 'against an employer for any injury sustained by his or her employees arising out of and in the course of the employment.' " (*Fermino v. Fedco Inc.* (1994) 7 Cal.4th 701, 708 (*Fermino*).) "[T]he legal theory supporting such exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. [Citations.] The function of the exclusive remedy provisions is to give efficacy to the theoretical 'compensation bargain.' " (*Shoemaker*, *supra*, 52 Cal.3d at

8

p. 16; see generally *Argonaut Insurance Co. v. Superior Court* (1985) 164 Cal.App.3d 320, 323.)

"The compensation bargain does not refer to a particular employment or to the parties' subjective expectations about particular employment. The compensation bargain is a 'presumed' and 'theoretical' bargain that forms the 'underlying premise behind this statutorily created system of workers' compensation.' " (*Gunnell v. Metrocolor Laboratories, Inc.* (2001) 92 Cal.App.4th 710, 720 (*Gunnell*).)

Our Supreme Court has described "a tripartite system for classifying injuries arising in the course of employment. First, there are injuries caused by employer negligence or without employer fault that are compensated at the normal rate under the workers' compensation system. Second, there are injuries caused by ordinary employer conduct that intentionally, knowingly or recklessly harms an employee, for which the employee may be entitled to extra compensation under [Labor Code] section 4553. Third, there are certain types of intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought." (*Fermino*, *supra*, 7 Cal.4th at pp. 713-714.)

The third category, which is at issue here, covers "certain types of injurious employer misconduct" (*Fermino*, *supra*, 7 Cal.4th at p. 708) that have been "variously identified as 'conduct where the employer or insurer stepped out of their proper roles' [citations], or 'conduct of an employer having a "questionable" relationship to the employment' [citations], but which may be essentially defined as not stemming from a risk reasonably

9

encompassed within the compensation bargain." (*Shoemaker*, *supra*, 52 Cal.3d at p. 16.)[2]

G.S.'s wrongful death claims are based on negligence and negligence per se, not intentional torts. The record, viewed in the light most favorable to him, shows that Contreras Curiel allowed, encouraged, and expected its servers to drink during their shifts, sometimes to the point of intoxication. (G.S. also claims that servers were "seemingly required" to consume alcohol during their shifts. The evidence does not support this claim.) Even assuming, without deciding, that the record supported the reasonable inference that restaurant managers encouraged Cruz to drink alcohol during her shift on the night of her accident, the record does not support the reasonable inference that Contreras Curiel *intentionally* caused Cruz's death. Indeed, G.S. makes no such allegation. The third category identified in *Fermino* does not apply.

As one court explained, in similar circumstances, "The third category is limited, by the express language of *Fermino*, to *intentional* conduct, which is not alleged here. [¶] An intentional tort is one in which the actor 'desires to cause consequences of his act' or 'believes that the consequences are substantially certain to result from it.' [Citation.] [¶] 'The modern view respecting actionable intentional misconduct by the employer is that it must be alleged and proved that the employer "acted deliberately with the specific intent to injure" the employee.' [Citations.] The complaint in this case alleges only negligence and recklessness, not a desire to cause the injurious consequences or a belief that they were substantially certain to result. The

---

2    The Legislature has also excluded certain conduct from workers' compensation exclusivity in Labor Code section 3602, subdivision (b). These exclusions are not at issue here.

10

foundation for potential avoidance of workers' compensation exclusivity—intentional conduct—is simply absent." (*Arendell v. Auto Parts Club, Inc.* (1994) 29 Cal.App.4th 1261, 1265 (*Arendell*).) The same reasoning applies here.

Although it was decided before *Fermino*, the opinion in *Childers v. Shasta Livestock Auction Yard, Inc.* (1987) 190 Cal.App.3d 792 (*Childers*) is instructive. The plaintiff in *Childers* worked at an auction yard. (*Id.* at p. 799.) One day after work, the yard foreman told the plaintiff and a coworker to " 'Go have a beer.' " (*Ibid.*) After the beer, the plaintiff and two coworkers went to the yard office and began drinking hard liquor with a customer. (*Ibid.*) "It was a regular practice for [the employer] to furnish alcoholic beverages on the premises to customers of the auction yard. Most of [its] employees had consumed alcoholic beverages in the office where they were kept, particularly on Friday nights." (*Ibid.*) The plaintiff got a ride home from one of the coworkers, they were involved in a single-car accident, and the plaintiff was injured. (*Ibid.*)

Plaintiff sued the auction yard. (*Childers*, *supra*, 190 Cal.App.3d at p. 798.) The trial court granted summary judgment, and the appellate court affirmed based on workers' compensation exclusivity. (*Ibid.*) As interpreted by the court, the facts surrounding alcohol use are similar to the facts here: "Employees were encouraged to drink together on [the employer's] premises, from which they would be departing by automobile. [The employer's] encouragement of alcohol consumption created a special risk to employees, like [plaintiff's coworker], who left the premises in their vehicles, because their driving skills would tend to be more impaired than the skills of members of the public who had not consumed alcohol. It was also entirely foreseeable that some employees who participated in the drinking would

11

return home with other employees. [Citation.] Thus, [the employer's] encouragement of the drinking also created a special risk for employees, such as plaintiff, who participated in the drinking and returned home with other employees." (*Id.* at pp. 813-814.) The court even found that "plaintiff's participation was a reasonable expectancy of the employment. [Citation.] Here, the express instruction of yard boss Suther to plaintiff to 'Go have a beer' on a Friday night when alcohol was regularly served to customers is sufficient to show an objectively reasonable belief that plaintiff's participation in the drinking was expected by his employer, Shasta." (*Id.* at p. 816.) The court concluded that the plaintiff's claims were barred by workers' compensation exclusivity. (*Id.* at p. 817.)

Although it did not consider the precise arguments at issue here, *Childers* supports the proposition that workers' compensation exclusivity applies to bar claims of injury based on employer encouragement and expectation of alcohol use. (*Childers, supra*, 190 Cal.App.3d at p. 816.) Similarly, although it did not discuss exclusivity, our Supreme Court in *McCarty v. Workmen's Compensation Appeals Board* (1974) 12 Cal.3d 677, 683, 685 (*McCarty*) held that survivors of an employee killed in a car accident, after becoming grossly intoxicated at his employer's regular "drinking part[y]," were entitled to workers' compensation benefits.

G.S. claims that the facts of *Childers* are "completely distinguishable from the case at hand," but he does not discuss those facts or explain how they are material. G.S. also claims "there are fundamental differences between this case and normal worker's compensation claims involving drinking alcohol on the job." He focuses on a passage in *McCarty* where the Supreme Court explained that the "drinking parties" were intended to "foster company camaraderie" and "provide an occasion for the discussion of

12

company business." (*McCarty*, *supra*, 12 Cal.3d at p. 682.) By contrast, G.S. argues, the servers' alcohol use here was intended to promote the sale of alcoholic beverages and maximize the restaurant's profits. G.S.'s argument misunderstands *McCarty*. The cited passage explains why the "drinking parties" benefitted the employer and were therefore within the scope of employment. (*Ibid*.) The same is true here, even under G.S.'s framing, because profit maximization likewise benefits Contreras Curiel.

G.S. focuses on the allegedly criminal nature of the restaurant's business practices surrounding alcohol. He cites two misdemeanor provisions: Penal Code section 303, which prohibits the employment of a person to procure or encourage the sale of alcoholic beverages, and Penal Code section 303a, which prohibits loitering for the purpose of begging or soliciting the purchase of alcoholic beverages for the loiterer. He also cites a similar regulatory provision of the Alcoholic Beverage Control (ABC) Act that identifies employment for solicitation as a ground for mandatory revocation of an alcoholic beverage license. (Bus. & Prof. Code, § 24200.5, subd. (b).) G.S. generally asserts that servers were expected to "solicit drinks from customers," but he does not identify the elements of these offenses or explain how they are satisfied. (Cf. *Garcia v. Munro* (1958) 161 Cal.App.2d 425, 429 [discussing the element of "loitering" in an analogous provision].) Nonetheless, viewed in the light most favorable to G.S., the record does not support even G.S.'s assertion. The evidence shows that customers asked to

13

purchase alcoholic beverages for the servers, not that servers solicited such beverages from customers.[3]

Moreover, the fact that a business practice is unlawful is not, in and of itself, sufficient to fall within the third *Fermino* category. In *Fermino*, the Supreme Court considered whether workers' compensation exclusivity covered injuries suffered as a result of an employer's false imprisonment of an employee. (*Fermino*, *supra*, 7 Cal.4th at p. 706.) The Supreme Court held that exclusivity did not apply: "False imprisonment is, by definition, an unreasonable and indeed criminal confinement. [Citation.] It is the close cousin of assault, which was, as discussed above, considered beyond the compensation bargain by most California courts even before its exceptional status was legislatively recognized in [Labor Code] section 3602, subdivision (b)(1). [Citation.] When an employer forcibly and criminally deprives an employee of her liberty, even as a means to otherwise legitimate ends, it steps outside its 'proper role,' whether it uses assault and battery to enforce that false imprisonment, or employs some other coercive stratagem." (*Fermino*, at pp. 721-722.)

*Fermino* cautioned that its discussion of false imprisonment should not apply to all criminal conduct: "In stating that false imprisonment is outside the scope of the compensation bargain because it constitutes a crime against the person of the employee, we do not mean to suggest that regulatory crimes such as violations of health and safety standards or special orders, are

---

3    G.S. cites two other provisions of the ABC Act, one prohibiting alcoholic beverages as gifts (Bus. & Prof. Code, § 25600, subds. (a)-(b)) and another prohibiting furnishing alcohol to obviously intoxicated persons (*id.*, § 25602, subd. (a)). He does not offer any cogent legal argument that these provisions were violated or that they contributed to Cruz's death. We therefore need not consider these provisions. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

14

actions outside the normal course of employment.  On the contrary, the [Workers' Compensation] Act includes such regulatory crimes within its scope.  [Citations.]  It is an expected part of the compensation bargain that industrial injury will result from an employer's violation of health and safety, environmental and similar regulations.  What we hold today, rather is that those classes of intentional employer crimes against the employee's person by means of violence and coercion, such as those crimes enumerated in part 1, title 8 of the Penal Code, violate the employee's reasonable expectations and transgress the limits of the compensation bargain." (*Fermino, supra,* 7 Cal.4th at p. 723, fn. 7.)

Thus, even if an employer's conduct constitutes criminal negligence and involuntary manslaughter, such conduct is not excepted from workers' compensation exclusivity.  (See, e.g., *Vuillemainroy v. American Rock & Asphalt, Inc.* (1999) 70 Cal.App.4th 1280, 1283, 1286 (*Vuillemainroy*).)  Similarly, " 'an employer who *flagrantly* violates numerous child protection laws, resulting in serious injury to an *illegally* employed fifteen (15) year old,' " nonetheless may rely on workers' compensation exclusivity.  (*Up-Right, Inc. v. Van Erickson* (1992) 5 Cal.App.4th 579, 581, 583.)

Here, even assuming (contrary to the record) that restaurant managers expected Cruz and other servers to solicit alcohol drinks from customers, these allegations are insufficient to remove G.S.'s claims from workers' compensation exclusivity.  "The evil the [nonsolicitation] statute is designed to meet is the use of the bar for 'a purposeful and commercial exploitation of the *customer*' [citation]." (*Harris v. Alcoholic Beverage Control Appeals Bd.* (1964) 224 Cal.App.2d 468, 471, italics added.)  The nonsolicitation statute, and the similar criminal statute, are for the protection of the public and customers, not the employee.  (*Ibid*.)  The crime of alcoholic beverage

15

solicitation is not similar to the "intentional employer crimes against the employee's person by means of violence and coercion" discussed in *Fermino*. (See *Fermino*, *supra*, 7 Cal.4th at p. 723, fn. 7; see also *Vacanti*, *supra*, 24 Cal.4th at p. 822; *Gunnell*, *supra*, 92 Cal.App.4th at pp. 725-726; *Vuillemainroy*, *supra*, 70 Cal.App.4th at p. 1286.)[4]

G.S. spends large portions of his brief assailing the restaurant's motives and accusing it of exploiting young, attractive female servers for profit. But a "sinister intention" is not sufficient to cause an employer's conduct to fall outside the scope of workers' compensation exclusivity. (*Fermino*, *supra*, 7 Cal.4th at p. 717.) "Rather, the critical issue is whether the alleged acts, bereft of their motivation, 'can ever be viewed as a normal aspect of the employer relationship' . . . ." (*Vacanti*, *supra*, 24 Cal.4th at p. 822.) While it is clearly reckless under many circumstances, and potentially exploitative under the circumstances here, it is equally clear that an employer's tolerance, encouragement, or expectation of alcohol consumption during work hours is part of the employment relationship for purposes of determining whether workers' compensation exclusivity applies. (See *McCarty*, *supra*, 12 Cal.3d at pp. 683, 685; *Childers*, *supra*, 190 Cal.App.3d at p. 816.) G.S.'s claims, which arise from such consumption, are therefore subject to workers' compensation exclusivity.

Motive is not entirely irrelevant, however. As our Supreme Court has explained, "[T]he motive element of a cause of action may insulate that cause

---

4    G.S. also cites Labor Code section 6400, subdivision (a), which states, "Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein." This is a quintessential regulatory safety provision, the violation of which does not support an exception to workers' compensation exclusivity. (See *Fermino*, *supra*, 7 Cal.4th at p. 723, fn. 7.)

of action from the purview of the exclusive remedy provisions.  This exception to exclusivity, however, is quite limited.  '[A]ny inquiry into an employer's motivation is undertaken not to determine whether the employer intentionally or knowingly injured the employee, but rather to ascertain whether the employer's conduct violated public policy and therefore fell outside the compensation bargain.' [Citation.]  In other words, the motive element of a cause of action excepts that cause of action from exclusivity *only if* it violates a fundamental public policy of this state.  [Citation.]  Thus, we have refused to bar both statutory and tort claims where their motive element violates such a policy." (*Vacanti*, *supra*, 24 Cal.4th at p. 823.)

Wrongful discharge in violation of public policy under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 is a prominent example of a cause of action excepted from workers' compensation exclusivity under this theory. "When an employer's decision to discharge an employee results from an animus that violates the fundamental policy of this state . . . , such misconduct cannot under any reasonable viewpoint be considered a 'normal part of the employment relationship' [citation] or a 'risk reasonably encompassed within the compensation bargain.' " (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1100; accord, *Miklosy v. Regents of the University of California* (2008) 44 Cal.4th 876, 902-903; *Vacanti*, *supra*, 24 Cal.4th at p. 823.)  Other examples include causes of action for unlawful discrimination under the Fair Employment and Housing Act and whistleblower retaliation under the Government Code. (*Vacanti*, at p. 823, citing *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1155, 1161, and *Shoemaker*, *supra*, 52 Cal.3d at pp. 22-23.)

The exception applies where the motive element of a cause of action violates a fundamental public policy of this state, not simply where an

17

employer's motive is blameworthy in some fashion. (See, e.g., *Arendell, supra*, 29 Cal.App.4th at p. 1266.) *Vacanti* itself rejected a plaintiff's attempt to apply the exception to causes of action for abuse of process and fraud, notwithstanding the obviously blameworthy motives underlying each cause of action: "[N]either abuse of process nor fraud contains a motive element that violates a fundamental public policy. Abuse of process claims merely require malice, which 'may be inferred from the wilful abuse of the process.' [Citation.] This malice element does not violate a fundamental public policy. Meanwhile, fraud requires only an 'intent to induce' another 'to alter his position to his injury or risk' and not an intent that violates a public policy rooted in a constitutional, statutory, or regulatory provision. [Citation.] Because the acts and motives underlying plaintiffs' abuse of process and fraud claims fall within the risks contemplated by the compensation bargain, these claims are barred." (*Vacanti, supra*, 24 Cal.4th at p. 824.)

G.S. has alleged causes of action for negligence and negligence per se. Neither cause of action incorporates a motive element at all, let alone one that violates a fundamental public policy of the state. The public policy exception to workers' compensation exclusivity does not apply here.

G.S. argues the public policy exception applies based on the restaurant's alleged violations of the ABC Act. These violations are unsubstantiated, as discussed above. And, even if the evidence supported the conclusion that the restaurant violated the Act's nonsolicitation provision, such a violation would not support an exception to workers' compensation exclusivity. The intent to employ servers to solicit customers to buy them drinks does not violate a fundamental public policy of this state. It is a regulatory offense.

18

G.S. points out that the Legislature has stated that the subject matter of the ABC Act "involves in the highest degree the economic, social, and moral well-being and the safety of the State and of all its people." (Bus. & Prof. Code, § 23001.) But however important the general subject matter of alcoholic beverage regulation may be, we are confident that the nonsolicitation statute does not occupy a fundamental place in this state's public policy.

G.S. relies on *Mercurio v. Dept. of Alcoholic Beverage Control* (1956) 144 Cal.App.2d 626, 631, for the proposition that "an employer that permits female employees to accept alcoholic drinks purchased by patrons is 'contrary to public welfare and morals.' " The regulation at issue in *Mercurio* prohibited " 'any female employee' " from soliciting or accepting an alcoholic beverage for her own consumption. (*Id.* at p. 629, fn. 3.) The regulation raises obvious equal protection concerns (see, e.g., *Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1, 20-22), and it was later replaced with a gender-neutral rule (see Cal. Code Regs., tit. 4, § 143, Register 72, No. 29 (July 12, 1972)). We note that the current rule, in addition to its nonsolicitation and nonacceptance provisions, provides as follows: "It is not the intent or purpose of this rule to prohibit the long-established practice of a licensee or a bartender accepting an incidental drink from a patron." (*Ibid.*) The state's attitude toward employee alcohol consumption is therefore somewhat ambiguous.

In any event, an act that is contrary to public welfare and morals does not necessarily involve a motive element that violates a *fundamental* public policy of this state. A finding of repeated violations of the ABC Act is tantamount to a finding of injury to public welfare. (*Martin v. Alcoholic Beverage Control Appeal Bd.* (1959) 52 Cal.2d 287, 291.) But that is not the

19

same as violating a fundamental public policy of the state. Our Supreme Court has cautioned that the public policy exception is "quite limited" (*Vacanti, supra,* 24 Cal.4th at p. 823) and it has recognized that even intentional regulatory violations do not remove an employer's conduct from workers' compensation exclusivity (*Fermino, supra,* 7 Cal.4th at p. 723, fn. 7). These principles cannot be squared with G.S.'s position that a violation of the ABC Act's nonsolicitation provision involves a fundamental public policy.[5]

Because Contreras Curiel has shown based on undisputed facts that G.S.'s claims are subject to workers' compensation exclusivity, we grant its petition for a writ of mandate to compel the trial court to enter summary judgment in its favor. (See *United States Borax & Chemical Corp. v. Superior Court* (1985) 167 Cal.App.3d 406, 408.) G.S.'s argument that writ relief is inappropriate is unpersuasive.[6]

---

[5] G.S. has filed a motion for judicial notice of certain records of the California Department of Alcoholic Beverage Control purportedly showing the licensing history for two of Contreras Curiel's restaurants. We deny the motion because G.S. has not established the relevance of the records. (See *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063; *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 701, fn. 1 ["A request for judicial notice is properly denied when the 'documents were not presented to the trial court and are not relevant to any disputed issue on appeal . . . .' "].)

[6] At oral argument, for the first time, G.S. alluded to other potential causes of action—based on evidence not before the trial court—that might fall outside the scope of workers' compensation exclusivity. We decline to consider arguments made for the first time at oral argument. (*Ace American Insurance Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1027, fn. 2.) We note, however, that G.S. has not shown he had insufficient time to take discovery or seek amendment of his complaint prior to the summary judgement hearing.

20

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order denying Contreras Curiel's motion for summary judgment and enter an order granting the motion. The stay ordered by this court is vacated. Contreras Curiel shall recover its costs. (Cal. Rules of Court, rule 8.493(a).)

GUERRERO, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

21